ILLINOIS REPUBLICAN PARTY, Petitioner, v. STATE BOARD OF ELECTIONS OF THE STATE OF ILLINOIS *et al.*, Respondents.— ILLINOIS REPUBLICAN PARTY, Petitioner, v. STATE BOARD OF ELECTIONS OF THE STATE OF ILLINOIS *et al.*, Respondents.

Fourth District   Nos. 4—97—0183, 4—97—0184 cons.

Argued November 17, 1997.—Opinion filed February 19, 1998.

GREEN, J., specially concurring in part and dissenting in part.

Jeffrey B. Fawell (argued) and Blanche Hill Fawell, both of Fawell, Fawell & Kavvadias, of Wheaton, for petitioner.

William R. Quinlan, John F. Kennedy, John P. O'Malley, and Gino L. DiVito (argued), all of Quinlan & Crisham, Ltd., of Chicago, for respondents Democratic Party of Illinois and United Democrats of Illinois.

JUSTICE McCULLOUGH delivered the opinion of the court:
This is a direct appeal of orders of the Illinois State Board of Elections (Board) dismissing the complaints of the Illinois Republican Party (Republican Party), alleging violations of the campaign disclosure requirements of the Election Code (10 ILCS 5/9—1 et seq. (West 1996)), against respondents, Democratic Party of Illinois (Democratic Party) and United Democrats of Illinois (United Democrats). Although the Board is properly a respondent for the purpose of appeal, it has filed no brief and any reference to "respondents" refers to the Democratic Party and the United Democrats and not the Board. The complaints alleged the United Democrats violated section 9—3 of the Campaign Disclosure Act, requiring the filing of a statement of organization by every political committee (10 ILCS 5/9—3 (West 1996)), and that both respondents violated section 9—10 of the Election Code, requiring the filing of reports of campaign contributions and expenditures of political committees (10 ILCS 5/9—10 (West 1996)), all in connection with the November 1996 general election. The dismissal orders were based not on the merits of the complaints, but on the Board's "deadlock" vote and consequent inability to achieve the statutorily mandated five-member vote to enable any action of the Board to become effective. See 10 ILCS 5/1A—7 (West 1996). Appeal was brought directly to this court pursuant to section 9—22 of the Election Code. 10 ILCS 5/9—22 (West 1996).
The Republican Party requests that this court reverse the orders

of the Board, enter a finding that the complaints were filed on "justifiable grounds," and remand to the Board with directions that a public adjudicative hearing be held on the complaints or, in the alternative, that we remand to the Board "for reconsideration and entry of proper findings." The respondents essentially contend the Board's dismissal is unreviewable and this court is without jurisdiction to fashion any relief because it can neither expropriate one of the "deadlock" votes and substitute its own, nor compel a majority vote.

The procedural background is as follows. Following receipt of the complaints, an investigatory hearing was held before a hearing examiner to determine whether the complaints were filed on "justifiable grounds" and had some basis in law and fact. See 26 Ill. Adm. Code § 125.252 (1996). Following submission of evidence and arguments by the parties, the hearing officer prepared a report to the Board expressing the opinion that the complaints were filed on "justifiable grounds" and recommending that the matter be subject to public adjudicative hearings. The Board's general counsel informed the Board of his agreement with the hearing officer's recommendation and his adoption of those remarks as his own.

The membership of the Board consists of eight members, four of whom are residents of Cook County and four of whom are residents outside Cook County. The membership as to each area shall be two affiliated with the same political party as the governor and two affiliated with the political party whose nominee for governor received the second highest number of votes. 10 ILCS 5/1A—2 (West 1996).

The Board met on March 17, 1997, to consider the complaints and the examiner's report. Counsel for both parties appeared and presented arguments on the evidence submitted to the examiner. A motion was made to find that the complaints were filed on "justifiable cause." Four members voted in favor of the motion and three against, so the Board did not achieve the five-vote majority necessary for any action of the Board to become effective (10 ILCS 5/1A—7 (West 1996)). The general counsel was asked what should be done to give the parties an order that was final for purposes of appeal. In response, a second motion was made, approved unanimously by the seven members present, "that the Board[,] having considered the complaint and being unable to agree by a vote of five upon a decision, *** dismisses the complaint for grounds of procedure and not on the merits." A written order was entered dismissing the complaints with no determination as to whether they were filed on justifiable grounds.

We first address the question of whether the Board's four-to-three vote, the basis for the unanimous vote dismissing the complaint, is reviewable by this court. This is an issue of first impression in Il-

linois and, as far as we have determined, no similar factual scenario has been addressed in a sister-state jurisdiction. There are two federal cases interpreting similar provisions of the federal election campaign act, which we invited the parties to brief following oral argument in this case. See *Democratic Congressional Campaign Committee v. Federal Election Comm'n*, 831 F.2d 1131 (D.C. Cir. 1987); *Common Cause v. Federal Election Comm'n*, 842 F.2d 436 (D.C. Cir. 1988).

The respondents contend that the 1970 Illinois Constitution, creating the Board, and the Election Code, pursuant to which the Board is organized, envision the likelihood of deadlock voting, since the Board's membership must be equally balanced between the two major political parties. See Ill. Const. 1970, art. III, § 5; 10 ILCS 5/1A—2 (West 1996). Respondents conclude, therefore, that it is within the powers and prerogatives of the Board to resolve issues before it by deadlock vote and, absent any statutory method for breaking that deadlock, this court lacks the ability to alter the constitutional and statutory framework by which the Board has acted.

▮ ▮ This contention is not persuasive or supported by the constitutional and statutory provisions. Article III, section 5, of the 1970 Illinois Constitution provides:

"A State Board of Elections shall have general supervision over the administration of the registration and election laws throughout the State. The General Assembly by law shall determine the size, manner of selection and compensation of the Board. No political party shall have a majority of members of the Board." Ill. Const. 1970, art. III, § 5.

Various provisions of the Election Code outline a broad grant of power and duties of the Board in connection with the administration of the registration and election laws (10 ILCS 5/1A—8 (West 1996)), and expressly authorize the Board to conduct investigations and inquiries related to political campaign disclosure requirements (10 ILCS 5/9—18 (West 1996)), hold hearings on complaints alleging violation of the campaign disclosure requirements of the Election Code (10 ILCS 5/9—21 (West 1996)), impose civil penalties for noncompliance with its orders (10 ILCS 5/9—23 (West 1996)), and petition the circuit court to compel compliance with its orders (10 ILCS 5/9—24 (West 1996)). Nothing within this broad constitutional and statutory framework indicates that the Board may abdicate its obligation, by reason of deadlock vote, to address and ameliorate violations of the Election Code and thereby forever insulate its failure to act from judicial review. Section 9—22 of the Election Code expressly provides:

"Any party to a Board hearing, any person who files a complaint

on which a hearing was denied or not acted upon within the time specified in Section 9—21 of this Act, and any party adversely affected by a judgment of the Board may obtain judicial review, which shall be governed by the provisions of the Administrative Review Law." 10 ILCS 5/9—22 (West 1996).

The plain language of section 9—22 provides for judicial review to "any party," or "any person" filing a complaint, whether or not the Board has taken any action. There is nothing within that section, nor any other provision of the Election Code, that precludes judicial review in the event of a deadlock vote by the Board. The practical effect of the Board's decision in this instance, dismissal of the complaint for failure to achieve the requisite vote rather than on the merits, is to leave one party "adversely affected by a judgment of the Board," a scenario indistinguishable from a dismissal based on a 5 to 3, or an 8 to 0 vote, an outcome fully encompassed by the language of section 9—22 of the Election Code. We therefore conclude that the Board's "deadlock" vote, four votes in favor and three votes against a finding of "justifiable grounds" for holding a public adjudicatory hearing, is reviewable by this court.

Our decision to review the Board's action is supported by cases from the federal courts addressing similar issues arising from complaints alleging violations, by political parties, of the federal election campaign act. In *Democratic Congressional Campaign*, the six-member Federal Election Commission (FEC) dismissed a complaint following a deadlock vote on a proposed finding that there existed "reason to believe" the National Republican Campaign Committee had violated certain spending limit provisions of the federal act. The general counsel for the FEC had recommended making such a finding based on FEC precedent. Judicial review provisions of the federal act provided that "[a]ny party aggrieved by an order of the Commission dismissing a complaint *** or by a failure of the Commission to act on such complaint" during the statutory period could file a petition for review in the district court. 2 U.S.C. § 437g(a)(8)(A) (1982). The court could declare the dismissal or the failure to act as contrary to law. 2 U.S.C. § 437g(a)(8)(C) (1982). In affirming the district court's finding that dismissal of the complaint was reviewable, the court of appeals found that nothing in the act's judicial review prescription precluded review of a dismissal due to deadlock. *Democratic Congressional Campaign*, 831 F.2d at 1133.

Similarly, in *Common Cause* the FEC entered a tie-vote dismissal of a complaint alleging violations of political campaign disclosure requirements. The general counsel's recommendation of going forward with the complaint was based on an assessment of what the

law required in light of the factual allegations of the case, rather than on precedent. In finding the absence of precedent guiding the general counsel's recommendation not determinative, the court found no principled distinction between the facts in *Democratic Congressional Campaign* and those before it that would insulate review of the FEC's declination to proceed, contrary to the recommendations of its general counsel. *Common Cause*, 842 F.2d at 449.

Although we hold the Board's deadlock vote is reviewable by this court, we decline at this point to address the merits and enter findings on whether the complaints present justifiable grounds. We conclude better policy dictates that we remand to the Board for a statement of reasons by those members rejecting the recommendation of the hearing examiner and their general counsel. It is the Board and not this court that has been constitutionally and statutorily entrusted with the duty and obligation to address the merits in the first instance. We concur with the views expressed by the federal courts for requiring the Board members to state of record the reasons for their vote: such practice facilitates meaningful judicial review of a deadlock decision, contributes to reasoned decision making, ensures reflection and an opportunity for self-correction, and enhances the predictability of commission decisions for future litigants. See *Common Cause*, 842 F.2d at 449. Our decision to remand to the Board is further supported by *Reinhardt v. Board of Education of Alton Community Unit School District No. 11*, 61 Ill. 2d 101, 103-04, 329 N.E.2d 218, 220 (1975), where the supreme court found that a decision of an administrative agency must contain findings from the evidence so as to make judicial review of that decision possible, and when it does not, it must be remanded to the agency.

■ While we decline at this point to address the merits, we deem it appropriate to address the purely legal and constitutional "defenses" put forth by respondents. If the defenses have merit, there would be nothing further for the Board to address. If the defenses are invalid, our resolution will aid the Board in focusing on the merits upon remand. The standard of review necessarily is *de novo* for two reasons. First, since the Board entered no factual findings on the merits, there is nothing to which this court can accord deference. See *Jackson v. Board of Review*, 105 Ill. 2d 501, 513, 475 N.E.2d 879, 885 (1985) (the factual findings of an administrative agency will not be reversed unless they are against the manifest weight of the evidence). Second, the legal defenses raised present a question of law and a reviewing court will not defer to an agency decision based on an erroneous application of the law. *Nichols v. Department of Employment Security*, 218 Ill. App. 3d 803, 809-10, 578 N.E.2d 1121, 1126-27 (1991).

The record indicates that on November 1, 1996, the executive director of the Republican Party sent a letter to the general counsel for the Board indicating that it was a complaint against the respondents and alleging violations of the Election Code. The letter, which was later attached to a complaint filed on the Board's form D-4 on February 19, 1997, was received on November 4. The Board took no action with respect to the November 4 letter despite numerous inquiries from the executive director of the Republican Party. On February 7, 1997, the general counsel wrote a letter to attorneys for the Republican Party indicating that "the matters [alleged] are not ones which the Board would pursue on its own independently if there is a complainant already apprised of the facts to be presented and able to undertake prosecution of the complaint on its own. In short, the Board acts in such matters as a forum, not as the advocate." The general counsel advised that if the Republican Party wanted to pursue the matter further it should file a D-4 complaint under the provisions of the Election Code.

The respondents argue that the November 4 letter constitutes a verified complaint because it satisfied "all the elements" required by section 9—20 of the Election Code. 10 ILCS 5/9—20 (West 1996). Respondents claim that since the Board failed to take action on the November 4 complaint within the time provided for under section 9—21 of the Election Code (10 ILCS 5/9—21 (West 1996)), which at most would have been 42 days after November 4, 1996, the Republican Party was required to file a petition for judicial review in this court within seven days thereafter, or no later than December 31, 1996. Since the Republican Party failed to do so, it has allegedly waived, *i.e.*, for untimeliness, its right to pursue the instant complaint or has slept on its rights and is barred by *laches*. The general counsel had advised the Board that the November 4 letter was not a valid complaint and had not been filed on form D-4.

As the Republican Party notes, there is no specified time limitation for filing a complaint—the time provisions specified in section 9—21 of the Campaign Disclosure Act apply only after a complaint has been filed. No one disputes that if the complaint of February 19, 1997, is not barred by the November 4 filing, it is valid. The issue then is whether the November 4 letter was a valid complaint.

■ Section 9—20 of the Election Code provides that a "verified complaint shall be directed to a candidate or the chairman or treasurer of a political committee." 10 ILCS 5/9—20 (West 1996). The November 4 letter is addressed to the Board's general counsel and not to respondents. The general counsel advised the Republican Party that the Board would not prosecute an action on its own due to its role as a forum rather than as a party.

The November 4 complaint was directed to neither of the respondents and does not name them as parties-respondent. No record evidence shows that they were served with process as provided in section 125.240 of the Board's rules and regulations. See 26 Ill. Adm. Code § 125.240 (1996) (a complaint filed within 60 days of an election requires written acknowledgment by the person served, personal delivery evidenced by an affidavit of the person making delivery, or abode service in accordance with the Civil Practice Law (see 735 ILCS 5/2—101 through 2—2109 (West 1996))). The November 4 letter lacked the most fundamental elements of notice and joinder and did not constitute a valid complaint. The November 4 complaint was considered invalid by the Board's general counsel for not having been properly filed on form D-4. Neither timeliness nor *laches* barred the Republican Party from subsequently filing the February 19, 1997, complaint.

■ Respondents maintain that section 100.10(f)(3) of the Board's general rules and regulations (26 Ill. Adm. Code § 100.10(f)(3) (1996))—which respondents claim is unconstitutionally vague—is a "legal predicate" for the Republican Party's complaints. That section provides:

> "If a person or whoever solicits or receives funds for political purposes or acts as a conduit for political funds, he or she would, in fact, become a political committee and have to comply with all provisions of the Illinois Campaign Financing Act." 26 Ill. Adm. Code § 100.10(f)(3) (1996).

Respondents claim that the meaning of "conduit" is unconstitutionally vague and the foundation of the complaints rests on the meaning of this term.

Contrary to respondents' contention, however, the complaints cite statutory sections 9—3, 9—4, 9—10, and 9—11 of the Election Code as the basis of the alleged violations, and not the regulations. Section 9—3 provides: "Every state political committee and every local political committee shall file with the [Board] *** a statement of organization within 30 days of the creation of such committee." 10 ILCS 5/9—3 (West 1996). Section 9—10 provides:

> "The treasurer of every state political committee and the treasurer of every local political committee shall file with the Board *** reports of campaign contributions and expenditures on forms to be prescribed or approved by the Board." 10 ILCS 5/9—10 (West 1996).

In order for section 100.10(f)(3) of the regulations to be relevant to the complaints, the United Democrats and the Democratic Party would have to maintain that their status as state and local political

committees is disputed. They have made no claim that they are not. The Democratic Party admitted that the United Democrats is its political subcommittee. In any event, it is not disputed that the United Democrats and the Democratic Party have solicited and received funds for political purposes. Therefore, even under the regulation in section 100.10(f)(3), they meet the definition of a political party subject to reporting requirements of the Election Code. Whether the meaning of "conduit" in section 100.10(f)(3) of the regulations is unconstitutionally vague is irrelevant to a determination of whether they have fulfilled their statutory obligations as state and local political committees to adhere to the requirements of sections 9—3, 9—4, 9—10, and 9—11 of the Election Code.

■ Finally, we note that the Republican Party raised at oral argument and in subsequent briefs filed with this court a construction of section 9—21 of the Election Code (10 ILCS 5/9—21 (West 1996)) that had not been presented to the hearing officer or the Board or included in its initial briefs filed in this court. Under such circumstances, the question is waived. 155 Ill. 2d R. 341(e)(7); *Veteran Supply Co. v. Swaw*, 192 Ill. App. 3d 286, 289, 548 N.E.2d 667, 669 (1989). Even if not waived, the contention raised by the Republican Party, that section 9—21 requires a five-vote majority only to *dismiss* a complaint (the corollary being that all complaints automatically receive a public hearing absent five votes to dismiss), is belied by section 1A—7 of the Election Code, which requires five votes for *any* action of the Board to become effective. 10 ILCS 5/1A—7 (West 1996). As noted by the hearing examiner, the purpose of a closed preliminary hearing is "to prevent the Board being made an instrument for the transmission of unfair accusations of wrongdoing made by political partisans against their opponents under circumstances in which the accused have an unfair and inadequate opportunity to defend themselves, such as untrue or ill-founded accusations filed a scant few days before an election." Such purpose might be subverted were all complaints subject to public scrutiny absent a five-vote bipartisan consensus.

The case is remanded to the Board for proceedings consistent with the views expressed in this opinion.

Remanded.

GARMAN, P.J., concurs.

JUSTICE GREEN, specially concurring in part and dissenting in part:

I concur in the decision of the majority to remand. However, I would reverse and remand to the Board with directions to grant the Republican Party a public adjudicatory hearing on its complaints.

Technically, the review before us is from an order of the Board entered on March 19, 1997, by which the Board voted unanimously to dismiss the complaints because of the deadlock in its previous voting. The issue before the Board had been whether the complaints were filed on "justifiable grounds" and had some basis in law and fact. I agree with the majority that these issues were timely and properly before the Board. Regardless of the split on the vote, the ultimate decision of the Board was a final denial of the Republican Party's complaints.

When a complaint such as that here is timely brought before the Board and it has jurisdiction, I conclude the complaint cannot properly be dismissed in bar of action if the decision is contrary to the manifest weight of the evidence. *People ex rel. Stephens v. Collins*, 35 Ill. 2d 499, 500, 221 N.E.2d 254, 255 (1966); *Dorfman v. Gerber*, 29 Ill. 2d 191, 196, 193 N.E.2d 770, 773 (1963). That is the usual rule in regard to decisions of administrative agencies, and such was the case here. In directing a result on administrative review in such circumstances, we are not putting ourselves in the position of the Board to any greater extent than is always done by a court sitting in judicial review of an administrative decision.

At the hearing before the Board, the exhibits of the Republican Party included the following: (1) an advertisement for a $100-per-ticket fundraiser featuring Hillary Clinton and stating that the event was a joint fundraiser for "Friends of Dick Durbin" and the United Democrats; (2) a newspaper article indicating that, according to chairman Tom Hynes, the United Democrats possessed a $1.4 million campaign fund and was an umbrella group primarily receiving its money from the Democratic National Committee; (3) a press release dated November 3, 1996, on letterhead of the United Democrats indicating that it is a committee of the Democratic Party created by resolution in April 1996 and disclosing that the press release was paid for by the United Democrats, a committee of the Democratic Party; (4) a page from a campaign disclosure report of the "Friends of Michael J. Madigan" political committee reporting a contribution of $35,000 to it by the United Democrats, listing a Chicago address different from that of the Democratic Party; (5) a Cook County Democratic Party campaign disclosure reporting a $4,000 contribution to it by the United Democrats; (6) a Sangamon County Democrats

campaign disclosure reporting a contribution of over $2,300 received from the United Democrats; (7) a Citizens for a Democratic Senate campaign disclosure reporting a $49,000 contribution from the United Democrats; and (8) a Citizens for a Democratic Senate campaign disclosure reporting a $126,700 transfer donation made by it to the United Democrats.

Evidence was presented that a diligent search of the Board's records had been made, but no D-1 statement of organization required by section 9—3 of the Election Code had ever been filed by the United Democrats nor had it filed any reports of campaign contributions received or made by it as required by section 9—10. As to the complaint filed against the Democratic Party and in response to its claim that the United Democrats was its subcommittee, the Republican Party claimed the Democratic Party's campaign reports were misleading as including campaign contributions made to it or expenditures made by it that, in fact, were made by the United Democrats.

Section 9—3 of the Election Code provides:

"Every state political committee and every local political committee shall file with the [Board], and every local political committee shall file with the county clerk, a statement of organization within 30 days of the creation of such committee." 10 ILCS 5/9—3 (West 1996).

Section 9—10 of the Election Code provides:

"The treasurer of every state political committee and the treasurer of every local political committee shall file with the Board, and the treasurer of every local political committee shall file with the county clerk, *** reports of campaign contributions and expenditures on forms to be prescribed or approved by the Board." 10 ILCS 5/9—10 (West 1996).

Section 9—11 of the Election Code provides *inter alia* that the campaign contributions reports required under section 9—10 shall disclose:

"(4) the full name and mailing address of each person who has made one or more contributions to or for such committee within the reporting period in an aggregate amount or value in excess of $150, together with the amount and date of such contributions;

(5) the total sum of individual contributions made to or for such committee during the reporting period and not reported under item (4);

(6) the name and address of each political committee from which the reporting committee received, or to which that committee made, any transfer of funds, in any aggregate amount or value in excess of $150, together with the amounts and dates of all transfers." 10 ILCS 5/9—11(4), (5), (6) (West 1996).

A local political committee is defined as the candidate himself, or any individual, group, or committee that accepts contributions or makes expenditures during a 12-month period in an aggregate amount exceeding $1,000 on behalf of or in opposition to candidates or in support of or opposition to a public policy question to be submitted to the electors of only one county. 10 ILCS 5/9—1.7 (West 1996). The definition of a state political committee is essentially the same as that for a local political committee, except that the threshold reporting amount for public policy questions submitted to the electors of more than one county is $3,000. 10 ILCS 5/9—1.8 (West 1996). "Every political committee shall designate a chairman and a treasurer" and the treasurer "shall be responsible for keeping the records and filing the statements and reports required by this Article." 10 ILCS 5/9—2 (West 1996).

The Democratic Party and the United Democrats responded to the foregoing evidence of violations of the Election Code by maintaining the United Democrats was a subcommittee of the Democratic Party and, as such, was not required to file a section 9—3 statement of organization or a section 9—10 report of campaign contributions and expenditures. Those respondents asserted that the Democratic Party had, by resolution, created that committee and included in its section 9—10 campaign reports all contributions received and expenditures made by it, including those of the United Democrats. However, a copy of the resolution submitted as allegedly creating the United Democrats as a subcommittee makes no mention of the creation of such subcommittee and section 9—10 campaign reports submitted by the Democratic Party failed to show any receipts from or expenditures to the United Democrats.

The proceeding before the Board was a preliminary one and the burden on the Republican Party was quite slight, as it only had to show "justifiable grounds" and that its complaints had *some* basis in fact and law. Under the foregoing evidence, any administrative decision, for whatever reason, dismissing the complaints was clearly contrary to the manifest weight of the evidence and cannot stand.