(No. 85176.—

ILLINOIS REPUBLICAN PARTY, Appellee, v. THE
ILLINOIS STATE BOARD OF ELECTIONS *et al.*
(The Democratic Party of Illinois *et al.*, Appellants).

*Opinion filed October 21, 1999.*

RATHJE, J., specially concurring.
FREEMAN, C.J., joined by BILANDIC and McMORROW, JJ.,
dissenting.
BILANDIC, J., joined by FREEMAN, C.J., and McMORROW,
J., also dissenting.

William R. Quinlan, Gino L. DiVito, John F. Kennedy
and John P. O'Malley, of Quinlan & Crisham, Ltd., of
Chicago, for appellants.

Jeffrey B. Fawell and Blanche Hill Fawell, of Fawell, Fawell & Kavvadias, of Wheaton, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The question presented by this appeal is whether the Illinois State Board of Elections (the Board) must conduct a public hearing on a complaint when the Board fails to determine in a closed preliminary hearing that the complaint was not filed on justifiable grounds. We hold that it must.

## BACKGROUND

On February 19, 1997, the Illinois Republican Party filed two complaints with the Board. One complaint alleged that the Democratic Party of Illinois had violated sections 9—10 and 9—11 of the Election Code (the Code) (10 ILCS 5/9—10, 9—11 (West 1996)) by filing inaccurate reports of campaign contributions received and made by it during 1996. The other complaint alleged that the United Democrats of Illinois had violated sections 9—3, 9—4, and 9—10 of the Code (10 ILCS 5/9—3, 9—4, 9—10 (West 1996)) by failing to file a statement of organization with the Board and by failing to report its contributions received and expenditures made during 1996. Upon receiving the complaints, the Board scheduled a closed preliminary hearing for March 11, 1997, and appointed a hearing examiner.

At the closed preliminary hearing, the Republican Party (hereinafter, complainant) offered exhibits supporting the allegations of its complaints. The Democratic Party of Illinois and United Democrats of Illinois (hereinafter, respondents) submitted written objections to the complaints. Following the hearing, the hearing examiner concluded that the complaints were filed on justifiable grounds and recommended to the Board that the complaints be docketed for public adjudicative hearings. The Board's general counsel then notified the Board that he agreed with the recommendation of the hearing examiner.

On March 17, 1997, four members of the Board voted to find that the complaints were filed on justifiable grounds. Three Board members voted against making such a determination.[1] Because a five-vote majority of the eight-member board had not been achieved, the Board's general counsel then recommended that the Board enter an order "dismissing the complaints for grounds of procedure and not on the merits" so that an appeal might be taken from the Board's action. The Board then voted unanimously to enter the following order:

"The Board is unable to reach a decision by vote of 5 members with respect to any matter raised by the record at closed preliminary hearing and the Board makes no determination as to whether complaint [sic] was filed upon justifiable grounds. IT IS HEREBY ORDERED: 1. No further action is to be taken. 2. That the complaint is dismissed on procedural grounds, the Board being unable to achieve a vote of 5 members with respect to any issue raised by the record."

Complainant appealed this order directly to the appellate court as provided by section 9—22 of the Code (10 ILCS 5/9—22 (West 1996)). In a published opinion, the appellate court remanded the cause to the Board, ordering that those members who voted that the complaints were not filed on justifiable grounds state of record their reasons for so voting. 294 Ill. App. 3d 915. Respondents petitioned this court for leave to appeal, which we granted. 177 Ill. 2d R. 315(a).

## ANALYSIS

Section 9—21 of the Code provides, in relevant part, as follows:

"Upon receipt of [a] complaint, the Board shall hold a

---

[1]By statute, the Board is composed of eight members. 10 ILCS 5/1A—2 (West 1996). At the time of the vote in the instant case, however, there was one vacancy on the Board.

closed preliminary hearing to determine whether or not the complaint appears to have been filed on justifiable grounds. *** If the Board determines that the complaint has not been filed on justifiable grounds, it shall dismiss the complaint without further hearing.

Whenever in the judgment of the Board, after affording due notice and an opportunity for a public hearing, any person has engaged or is about to engage in an act or practice which constitutes or will constitute a violation of any provision of this Article or any regulation or order issued thereunder, the Board shall issue an order directing such person to take such action as the Board determines may be necessary in the public interest to correct the violation." 10 ILCS 5/9—21 (West 1996).

In addition, section 1A—7 of the Code provides that "[f]ive members of the Board are necessary to constitute a quorum and 5 votes are necessary for any action of the Board to become effective ***." 10 ILCS 5/1A—7 (West 1996).

Respondents contend that if the Board is unable to achieve a majority determination as to whether or not a complaint has been filed on justifiable grounds following the closed preliminary hearing, the Board is prohibited from taking further action on the complaint. Respondents assert that because five votes are necessary for any action of the Board to become effective, the Board may not conduct a public hearing on a complaint unless five of its members determine that the complaint was filed on justifiable grounds. Respondents' arguments are based on an incorrect reading of the relevant statutory provisions.

Section 9—21 of the Code requires the Board to hold a closed preliminary hearing upon receipt of a complaint alleging a violation of the Code. 10 ILCS 5/9—21 (West 1996). This same section then requires that the Board dismiss the complaint without further hearing if, at the conclusion of the closed preliminary hearing, the Board determines that the complaint has not been filed on justifiable grounds. Because five votes are necessary for any

action of the Board to become effective, the Board may not dismiss a complaint after the closed preliminary hearing unless at least five members vote to do so.

Respondents suggest that because five votes are needed to dismiss a complaint after the closed preliminary hearing, five votes are also required to proceed with a public hearing on a complaint. Nothing in the Code, however, supports such a requirement. Respondents appear to be laboring under the belief that, at the conclusion of the closed preliminary hearing, the Board is required to vote on whether the complaint was filed on justifiable grounds. On the contrary, the only requirement in the statute is that the Board dismiss the complaint if it determines that the complaint was *not* filed on justifiable grounds. 10 ILCS 5/9—21 (West 1996). The statute thus does not require any majority vote by the Board prior to a public hearing on the complaint.

Furthermore, it is clear that the statute contemplates a public hearing for those complaints not dismissed by the Board. In the sentence which immediately follows the description of the procedure for dismissing a complaint, section 9—21 requires that the Board afford "an opportunity for a public hearing" before taking any action to correct an alleged violation of the Code. 10 ILCS 5/9—21 (West 1996). This requirement of a public hearing is consistent with the broader purposes of the Code's campaign finance disclosure provisions. See 10 ILCS 5/9—10 *et seq.* (West 1996) (mandating the filing of reports listing the source and amount of campaign contributions and expenditures). By requiring that every complaint not dismissed by a majority of the Board proceed to a public hearing, the Code effectively promotes the goals of candor and openness underlying these substantive provisions.

At the conclusion of the preliminary hearing in the instant case, the Board failed to achieve a vote of five

members to dismiss the complaints as not filed on justifiable grounds. For the reasons stated above, the complaints were then required to proceed to a public hearing. The Board thus lacked authority to enter its subsequent order dismissing the complaints without reaching their merits. Accordingly, the judgment of the Board is set aside and the complaints are remanded to the Board for a public hearing.

Respondents also contend that the appellate court erred in addressing a number of defenses raised by respondents in their objections to the complaints filed with the Board. Because we have concluded that the Board's action on the complaints was unauthorized, we agree with respondents that it was improper for the appellate court to address these additional matters. Therefore, the appellate court's judgment remanding the proceeding to the Board is affirmed but the remainder of its opinion is vacated.

*Appellate court judgment affirmed in part and vacated in part; Board decision set aside; cause remanded.*

JUSTICE RATHJE, specially concurring:

I agree entirely with the majority's conclusion that, unless five Board members conclude during the closed preliminary hearing that a complaint was not filed on justifiable grounds, the Board must conduct a public hearing on that complaint. I write separately only to underscore the disastrous public policy consequences associated with the contrary result.

The State Board of Elections, unlike most other state agencies, boards, and commissions, is constitutionally mandated. Article III, section 5, of the Illinois Constitution provides:

"A State Board of Elections shall have general supervision over the administration of the registration and elec-

tion laws throughout the State. The general assembly by law shall determine the size, manner of selection and comprehension of the Board. No political party shall have a majority of members of the Board."

To this end, the General Assembly has provided that the Board membership shall consist of eight members, four from each of the two major political parties. 10 ILCS 5/1A—2 (West 1998). In addition, "5 votes are necessary for any action of the Board to become effective." 10 ILCS 5/1A—7 (West 1998). In construing the legislature's intent with respect to these provisions, this court has held that "the General Assembly obviously sought *to negate partisanship as much as possible* and to guarantee the Board's *political independence*." (Emphasis added.) *Lunding v. Walker*, 65 Ill. 2d 516, 527 (1976).

With these principles in mind, consider the following question: Whose reading of section 9—21 does a better job of negating partisanship and guaranteeing the Board's political independence, the majority's or the dissent's? A simple hypothetical provides the answer.

Assume that a verified complaint is filed against a Republican candidate. Assume next that, during the closed preliminary hearing, the Board membership votes along strict party lines on whether the complaint was "filed on justifiable grounds." Under the majority's construction of section 9—21, these facts would lead to a public hearing on the verified complaint. Partisanship goes unrewarded, and the investigation continues. By contrast, under the dissent's construction of section 9—21, a strict party line vote precludes any further inquiry into the verified complaint. Thus, as long as partisanship prevails and the two sides never break ranks, no complaint will ever be considered on its merits in a public forum. Were the dissent's view to prevail, the Board might as well pack up and go home, as no complaint would *ever* receive a public hearing.

Again, in designing the Board membership, the Gen-

eral Assembly "sought to negate partisanship as much as possible and to guarantee the Board's political independence." *Lunding*, 65 Ill. 2d at 527. The dissent's reading of section 9—21, while perhaps expedient under the particular facts presented, makes a mockery of the General Assembly's designs. The majority, by contrast, not only construes section 9—21 consistently with its plain language, but it also ensures that the public policies that inspired the Board are vindicated.

CHIEF JUSTICE FREEMAN, dissenting:

I join in Justice Bilandic's dissent. Like Justice Bilandic, I believe that a determination to hold a public hearing is an action of the Board. Pursuant to section 1A—7 of the Election Code (10 ILCS 5/1A—7 (West 1996)), "5 votes are necessary for any action of the Board to become effective." The majority holds that five members of the Board must find that a complaint is not filed on justifiable grounds in order for the Board to dismiss the complaint. However, the majority holds that the Board is not required to find that a complaint is filed on justifiable grounds in order to proceed to a hearing. Thus, one action of the Board, a determination that a complaint is not filed on justifiable grounds and must be dismissed, requires five votes to become effective, whereas another action of the Board, a determination that a complaint is filed on justifiable grounds and merits a public adjudicative hearing, does not require a vote. The majority's holding ignores the plain language of section 1A—7, which mandates five votes for *any* action of the Board to become effective. I believe that the majority is mistaken in its selective application of section 1A—7.

I also believe that the legislative history supports Justice Bilandic's position. As originally conceived, the Board consisted of four members appointed by the Governor. The speaker of the House of Representatives, the House Minority Leader, the President of the Senate

and the Senate Minority Leader each designated two nominees to serve on the Board. The Governor chose one member from the nominees designated by each leader. Ill. Rev. Stat. 1973, ch. 46, par. 1A—3. Three members of the Board were necessary to constitute a quorum and a majority of the members voting was necessary for any action of the Board to become effective. Ill. Rev. Stat. 1973, ch. 46, par. 1A—7. Since the membership of the Board was divided equally between the Republican Party and the Democratic Party, any action of the Board required the votes of two members of one party, plus the vote of one member of the opposite party.

In 1974, the legislature enacted Senate Bill 1568 as Public Act 78—1183.[2] See Pub. Act 78—1183, eff. September 3, 1974. Public Act 78—1183 amended the Code, adding thereto article 9, "Disclosure of Campaign Contributions and Expenditures." As introduced in the General Assembly, Senate Bill 1568 contained the following provision:

"Sec. 9—19. Any person who believes a violation of this Article has occurred may file a formal complaint with the Board, in a manner prescribed by the Board. Upon receipt of such complaint, the Board shall expeditiously make an investigation of the matter complained of." 78th Ill. Gen. Assem., Senate Bill 1568, 1974 Sess.

Various legislators proposed amendments to Senate Bill 1568. Senate amendment 9 reflected the concerns of members of the General Assembly that the Board might be used as a forum in which baseless complaints are filed against a candidate and/or a political committee associated with the candidate during the course of an election:

"Partee: 'Amendment No. 9 is an amendment which Senator Roe has seen which is just an extension of the concept for what to do when a complaint is filed during a

_____

[2]A bill identical to Senate Bill 1568 was introduced in the House as House Bill 2825. For purposes of this dissent, I will refer to both Senate Bill 1568 and House Bill 2825 as Senate Bill 1568.

campaign. And, this amendment simply says that the Board shall neither accept nor publicize a complaint unless three members believe that a reasonable basis exists for making an initial determination if there are reasonable grounds to believe that the complaint can be verified. Now what we seek to do here is the same kind of thing they do in the Judicial Inquiry Board and many other of our statutory areas where complaints are filed. And, so that you can keep scurrilous complaints from being filed for the purpose of publicity, the three members of the Board must first make a determination that there is some reasonable basis for it. And, that fact is suppressed so that nobody files against you simply because he's looking for a newspaper headline three or four days before the election. I think, I state the fact correctly when I say that there is acceptance of this amendment. Is that right Senator Roe?' " 78th Ill. Gen. Assem., Senate Proceedings, June 6, 1974, at 205-06 (statement of Senator Partee).

Representative Shea proposed a similar amendment in the House. The following exchange then took place:

"Shea: 'Bill, I'll tell you what my problem is and perhaps when Retunis is drawing another Amendment he can put this one in it and that it's very easy to make accusations and it's the accusation that hits the front page; it's the accusation that makes the big dent and then when and [if] I prove or somebody proves that they're right, you find it someplace back buried and the damage has been done. Now all I want to do is protect people. I want to say if somebody wants to make [an] accusation against [you] before we start publicizing it, before we make it public knowledge, let's find out if there is, in fact, some basis to that complaint.'

Collins: 'I couldn't agree with you more as far as it goes, Jerry. However, I do think we're opening oursel[ves] up for criticism that it is our desire right from the start to conduct things in secret and I just, I don't think [it's] a good idea. If we can achieve. . . If we can achieve what you desire and phrase it differently, I don't know ah. . . maybe we could get together on this. ***'
***

Shea: '*** All I want to do is insure that you're not go-

ing to do to the Members of this House, to other political candidates, just open up another avenue to blast them and then don't give them a chance to respond in kind.' " 78th Ill. Gen. Assem., House Proceedings, June 11, 1974, at 37-38 (statements of Representatives Shea and Collins).

Senate Bill 1568 was redrafted to address these concerns. The version of Senate Bill 1568 adopted by the Legislature contains the following provisions.

"§ 9—20. Any person who believes a violation of this Article has occurred may file a verified complaint with the Board. ***

* * *

§ 9—21. Upon receipt of such complaint, the Board shall hold a closed preliminary hearing to determine whether or not the complaint appears to have been filed on justifiable grounds. Such closed preliminary hearing shall be conducted as soon as practicable after affording reasonable notice, a copy of the complaint, and an opportunity to testify at such hearing to both the person making the complaint and the person against whom the complaint is directed. ***

* * *

§ 9—26. ***

Willful filing of a false complaint under this Article shall constitute a Class B misdemeanor." Pub. Act 78—1183, §§ 9—20, 9—21, 9—26, eff. September 3, 1974.

The redrafted version of Senate Bill 1568 made it more difficult to file a false complaint against a candidate. By requiring that a complaint be verified, and criminalizing the filing of a false complaint, the legislature sent a message that the filing of a false complaint would not be tolerated. By requiring that the Board hold a closed preliminary hearing on a complaint, the legislature sent a message that a false complaint would not be publicized by the Board. The Board would not be used as a forum to attack candidates during the course of an election.

A House debate on July 1, 1974, illustrates the concerns of the members of the General Assembly, and

how the redrafted version of Senate Bill 1568 addressed those concerns. Representative Murphy gave a hypothetical regarding a letter that is sent via registered mail, return receipt requested, which does not contain a cash contribution as claimed by the sender:

"Murphy: 'But how would you prove that that's a false complaint, though, that's what I'm saying?'

Collins: 'Well, how, how [sic] would he prove this...'

Murphy: 'Circumstantial evidence, he withdrew the money, he got a receipt that you accepted, the letter..... It's a dangerous area, that's all I'm saying.'

Collins: 'Perhaps, of course the State Board of Elections would have a preliminary hearing in a closed session on something like this and long before it ever got near a court it would be heard and considered by the State Board of Elections.' '' 78th Ill. Gen. Assem., House Proceedings, July 1, 1974, at 45 (statements of Representatives Murphy and Collins).

In 1978, the General Assembly changed the membership of the Board from four members to eight members (10 ILCS 5/1A—2 (West 1996)), changed the quorum requirement from three members to five members of the Board and inserted the requirement that five votes are necessary for any action of the Board to become effective (10 ILCS 5/1A—7 (West 1996)). Section 9—18 (10 ILCS 5/9—18 (West 1996)) was amended in 1979 to change from three to five the number of votes required for the Board to issue a subpoena in the process of an investigation, inquiry or hearing.[3] Thus, the amendment reflected the changes in the Board membership and voting require-

---

[3]As introduced in the General Assembly, Senate Bill 1568 authorized the Board to issue subpoenas "signed by the chairman or by a member designated by the Board." 78th Ill. Gen. Assem., Senate Bill 1568, 1974 Sess. The redrafted version of Senate Bill 1568 authorized the Board to issue subpoenas "by a vote of 3 members of the Board." Pub. Act 78—1183, § 9—18, eff. September 3, 1974. Thus, the Board could issue a subpoena only if two

ments. In the Senate debates Senator Rock described the changes that the amendment would effectuate:

"Rock: 'Thank you, Mr. President. House Bill 1914 makes, I think, three or four important changes to the Election Code as we know it. *** [A]nd thirdly, it mandates or calls upon the State Board of Election to have hearings to require five members instead of three.' " 81st Ill. Gen. Assem., Senate Proceedings, July 1, 1979, at 186-87 (statement of Senator Rock).

Senator Rock's statement reflects the legislature's belief that five votes are required in order for the Board to hold a public hearing and to issue subpoenas for such a hearing.

I believe the legislature intended that the Board hold a closed preliminary hearing, followed by a determination that the complaint has been filed on justifiable grounds prior to holding a public hearing. Requiring that the Board determine that the complaint has been filed on justifiable grounds is consonant with the concerns expressed by the members of the General Assembly. On the other hand, holding, as the majority does, that the Board is required to proceed to a public hearing on a complaint without a determination that the complaint is based on justifiable grounds completely ignores the concerns of the members of the General Assembly. As an example, a baseless complaint, filed against a candidate in an election year, may proceed to a public hearing simply because the Board, split along party lines, cannot garner the five votes required to dismiss the complaint. The effect of the majority's holding is to defer, but not foreclose, a public airing of a baseless complaint.

In his special concurrence, Justice Rathje gives a hypothetical of a verified complaint filed against a Republican candidate which, under the majority's holding,

---

members of one party and one member of the opposite party so voted.

proceeds to a public hearing despite the opposition of Republican members of the Board. Justice Rathje believes that a public hearing is the correct outcome and "ensures that the public policies that inspired the Board are vindicated." 188 Ill. 2d at 77. However, consider the case where the verified complaint is not based on justifiable grounds. The Republican members of the Board oppose the complaint, and justly so. The complaint proceeds to a public hearing at which baseless charges are leveled against the Republican candidate, severely damaging his campaign days before the election. I believe the members of the General Assembly did not intend that the Board become a forum in which complaints, not based on justifiable grounds, are "filed for the purpose of publicity."

In arriving at its holding today, it seems that the majority has read section 9—21 of the Code in isolation. It is generally recognized that sections of a code are to be construed in reference to one another in order to give harmonious meaning to the act as a whole. *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992); *Maiter v. Chicago Board of Education*, 82 Ill. 2d 373, 389 (1980). Section 1A—7 of the Code (10 ILCS 5/1A—7 (West 1996)) requires five votes for any action of the Board to become effective. Additionally, the fact that five votes are required to issue subpoenas (10 ILCS 5/9—18 (West 1996)) is an indication that the Board must determine, by five affirmative votes, that a complaint is filed on justifiable grounds and merits a public adjudicative hearing.

There are further problems with the majority's holding which I must highlight. First, the majority remands this cause for a public adjudicative hearing; however, the Board may find it impossible to compel the attendance of witnesses and the production of documents at such a hearing. In the present case four members of the Board voted to find that the complaints were filed on justifiable

grounds and the Board should hold public adjudicative hearings. Three members of the Board voted to find that the complaints were not filed on justifiable grounds and should be dismissed. Will the Board find the five votes necessary to issue subpoenas? If it does not, will the Board be able to hold a meaningful adjudicative hearing?

Second, the majority's holding deprives the Board of the discretion not to act on a complaint and is contrary to section 9—22 of the Code (10 ILCS 5/9—22 (West 1996)). Section 9—22 provides in part:

> "Any party to a Board hearing, any person who files a complaint on which a hearing was denied or not acted upon within the time specified in Section 9—21 of this Act, and any party adversely affected by a judgment of the Board may obtain judicial review ***." 10 ILCS 5/9—22 (West 1996).

Thus, section 9—22 affords administrative review to a person whose complaint is not acted upon or who is denied a hearing on a complaint. Since the majority requires that the Board hold a public adjudicative hearing on any complaint the Board fails to dismiss, the Board does not have the discretion to deny a public adjudicative hearing on a complaint. Consequently, the provision allowing administrative review of the denial of a hearing is superfluous. When a court engages in statutory construction, its sole task is to ascertain and give effect to the intent of the legislature. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 387 (1998); *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270 (1998). As noted above, sections of a code must be construed in reference to one another in order to give harmonious meaning to the act as a whole. *Maiter*, 82 Ill. 2d at 389. The court should construe the statute, if possible, so that no term is rendered superfluous or meaningless. *Texaco*, 182 Ill. 2d at 270. The majority's ruling that the Board is required to hold public adjudicative hearings if it cannot determine that a complaint is not filed

on justifiable grounds renders superfluous the provision for an appeal from a denial of a hearing.

Third, the majority opinion may be interpreted to say that the Board cannot dismiss a complaint on procedural grounds. The majority notes:

"At the conclusion of the preliminary hearing in the instant case, the Board failed to achieve a vote of five members to dismiss the complaints as not filed on justifiable grounds. For the reasons stated above, the complaints were then required to proceed to a public hearing. The Board thus lacked authority to enter its subsequent order dismissing the complaints without reaching their merits." 188 Ill. 2d at 74-75.

Thus, the majority seems to foreclose the possibility that the Board might dismiss a complaint because the complaint is deficient, albeit filed on justifiable grounds.

The requirements for a complaint are found in section 9—20 of the Code (10 ILCS 5/9—20 (West 1996)). A complaint must be in writing, state the name of the candidate or chairman of the political committee against whom the complaint is directed, state the statutory provisions which are alleged to have been violated, state the time, place, and nature of the alleged offense, and be verified, dated and signed by the person filing the complaint. 10 ILCS 5/9—20 (West 1996). A complaint is procedurally deficient if it does not comply with section 9—20. The majority's broad statement might be taken to mean the Board lacks authority to dismiss a complaint for failure to comply with section 9—20.

In the instant case, the Illinois Republican Party filed a letter of complaint with the Board on November 4, 1996 (hereinafter, the November complaint). The November complaint was in writing, identified the United Democrats of Illinois and the Democratic Party of Illinois as the parties against whom it was directed, stated the statutory provisions which were allegedly violated, stated the time, place, and nature of the alleged offenses, and

was verified, dated and signed by the executive director of the Illinois Republican Party. The Board did not take any action on the November complaint or vote to dismiss the November complaint as not filed on justifiable grounds. The Illinois Republican Party then filed the complaints at bar, using Form D-4 Complaint for Violation of the Campaign Disclosure Act, and attaching thereto the November complaint. The United Democrats of Illinois and the Democratic Party of Illinois argued before the Board that the Illinois Republican Party could not file the complaints at bar because the Illinois Republican Party had failed to appeal the denial of a hearing by the Board on the November complaint. The Illinois Republican Party then introduced a letter from the Board's general counsel to show the Board did not consider the November complaint to be a proper complaint because it was not filed on the Board's form D-4. In light of the majority's holding, should the Board have held a closed preliminary hearing on the November complaint, followed by a public adjudicative hearing? In the absence of a vote to dismiss the November complaint as not filed on justifiable grounds, does not the majority require that the Board hold a public adjudicative hearing?

The majority states that "the only requirement in the statute is that the Board dismiss the complaint if it determines that the complaint was *not* filed on justifiable grounds" (emphasis in original) (188 Ill. 2d at 74), failing to recognize that a vote on whether a complaint is not filed on justifiable grounds is also a vote on whether the complaint is filed on justifiable grounds. Section 9—21 of the Code provides that "the Board shall hold a closed preliminary hearing to determine whether or not the complaint appears to have been filed on justifiable grounds." 10 ILCS 5/9—21 (West 1996). I believe that the Board is required to find that a complaint is filed on

justifiable grounds in order to proceed to a public adjudicative hearing. I respectfully dissent.

JUSTICES BILANDIC and McMORROW join in this dissent.

JUSTICE BILANDIC, also dissenting:

The majority requires the Illinois State Board of Elections (the Board) to conduct a public hearing on complaints filed with the Board even though the Board unanimously decided to dismiss the complaints because the Board was not able to determine with five affirmative votes that the complaints were filed on justifiable grounds. This determination conflicts with the provisions of the Election Code that govern the Board's actions, and with a prior decision of this court. For these reasons, I respectfully dissent.

The Board is an administrative agency created by the Illinois Constitution of 1970. The Illinois Constitution, in creating the Board, specifically contemplated that the Board would operate by consensus across political party lines by requiring that "[n]o political party shall have a majority of members of the Board." Ill. Const. 1970, art. III, § 5. The General Assembly, pursuant to the bipartisan mandate of the Illinois Constitution, determined that the Board shall consist of eight members split equally between two political parties. 10 ILCS 5/1A—2 (West 1996). Four members of the Board must be affiliated with the same political party as the Governor, and four members must be affiliated with the political party whose nominee for Governor in the most recent general election received the second highest number of votes. 10 ILCS 5/1A—2 (West 1996). Consequently, the Board currently is comprised of members whose political affiliation is allocated equally between the Republican Party and the Democratic Party. Moreover, to ensure bipartisan cooperation among the Board members, the General As-

sembly determined that five votes are required for *any* action of the Board to become effective. 10 ILCS 5/1A—7 (West 1996).

In this case, after a closed preliminary hearing, the complainant did not convince the required five members of the Board that there were justifiable grounds to proceed on its complaints. Accordingly, the Board unanimously decided not to take further action and dismissed the complaints on procedural grounds. Section 1A—7 of the Election Code (10 ILCS 5/1A—7 (West 1996)) dictates that five votes are necessary for effective Board action. The Board's dismissal of the complaints comports with that section because there were insufficient votes to support a finding that the complaints were filed on justifiable grounds.

I disagree with the majority's determination that, because the Board failed to achieve a vote of five members to dismiss the complaints as not filed on justifiable grounds, the Board was required to proceed with a public hearing. A decision to proceed with a public hearing on a complaint constitutes an action of the Board. It therefore follows that, under section 1A—7 of the Election Code, such a decision requires five affirmative votes of the Board members. The Board did not have the requisite number of votes, as required by section 1A—7, to take any further action, including conducting a public hearing. Instead, the Board unanimously voted *not* to take further action. Thus, the majority's holding is contradicted by the statutory mandate that five votes are necessary for *any* action of the Board to become effective.

The plain language of section 9—21 of the Election Code (10 ILCS 5/9—21 (West 1996)) likewise does not support remanding this cause for a public hearing. There is nothing in the language of section 9—21 that requires the Board to hold a public hearing where there are not sufficient votes to determine that a complaint was filed

on justifiable grounds. The Board's obligation under section 9—21 is to hold a closed preliminary hearing to determine whether the complaint was filed on justifiable grounds. 10 ILCS 5/9—21 (West 1996). The Board fulfilled that duty. At the conclusion of the closed preliminary hearing, the statute authorizes the Board to "dismiss the complaint without further hearing" if it determines that the complaint has not been filed on justifiable grounds. 10 ILCS 5/9—21 (West 1996). This authorization to dismiss a complaint at an early stage, in the absence of justifiable grounds, does not mandate that the Board hold a public hearing if it deadlocks on this issue. Section 9—21 does not mention such a requirement, and such a requirement cannot be created or implied. See *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990) (stating that "a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express"). Moreover, as noted by the appellate court in rejecting this interpretation of section 9—21, requiring the Board to proceed with a public hearing on every complaint absent five votes to dismiss would thwart the purpose of the statute:

"[T]he purpose of a closed preliminary hearing is 'to prevent the Board being made an instrument for the transmission of unfair accusations of wrongdoing made by political partisans against their opponents under circumstances in which the accused have an unfair and inadequate opportunity to defend themselves, such as untrue or ill-founded accusations filed a scant few days before an election.' Such purpose might be subverted were all complaints subject to public scrutiny absent a five-vote bipartisan consensus." 294 Ill. App. 3d at 924.

As a final matter, the majority fails to recognize that the Board is entitled to deadlock on issues where it cannot obtain the five votes necessary to take further action. The Election Code does not require the Board's deadlock to be broken in favor of proceeding on the complaints. In

fact, this court found unconstitutional a previous legislative attempt to break a Board deadlock. See *Walker v. State Board of Elections*, 65 Ill. 2d 543 (1976). In *Walker*, the plaintiffs challenged the constitutionality of certain provisions of the Election Code, including a provision which established a method to resolve tie votes of the Board. The challenged tie-breaker section of the Election Code provided that, in the event of a tie vote on the Board with respect to proposed Board action, one Board member's name would be drawn randomly by lot, and that Board member would be disqualified from voting on the proposed action. *Walker*, 65 Ill. 2d at 562-63. This court held that the tie-breaker provision, which resulted in the removal of a Board member for purposes of one deadlock vote, violated the mandate of article III, section 5, of the Illinois Constitution, which provides that no political party have a majority on the Board. *Walker*, 65 Ill. 2d at 565. The *Walker* court reasoned that if one Board member was removed from the Board by random draw, the removed Board member's political party would then be a minority on the Board. *Walker*, 65 Ill. 2d at 564-65. Likewise here, the majority improperly attempts to break the Board's deadlock by remanding for a public hearing. Such judicial intervention in a Board deadlock was not intended by the drafters of our state constitution. Nor, as earlier discussed, is this contemplated in the Election Code.

For these reasons, I would find that the Board's unanimous dismissal of the complaints and decision not to take further action were in full compliance with constitutional and statutory mandates and, therefore, should be affirmed.

CHIEF JUSTICE FREEMAN and JUSTICE McMORROW join in this dissent.