133 Ill. App.2d 735 (1971)
272 N.E.2d 783
B. PAUL ZEJMOWICZ et al., Plaintiffs-Appellees,
v.
COUNTY BOARD OF SCHOOL TRUSTEES OF WHITESIDE COUNTY et al., Defendants-Appellants  (COUNTY BOARD OF SCHOOL TRUSTEES OF ROCK ISLAND COUNTY et al., Defendants-Appellees.)
No. 71-20.
Illinois Appellate Court  Third District.
August 12, 1971.
*736 Bull, Ludens, Potter & Coplan, of Morrison, (Robert H. Potter, of counsel,) for appellants.
Junius P. Califf, of Moline, for appellees.
Judgment affirmed.
Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
The Circuit Court of Whiteside County reversed an order of the Whiteside County Board of School Trustees in which the trustees refused detachment of certain territory from Erie Community School District No. 1 (hereinafter called "Erie") located in Whiteside, Henry and Rock Island Counties. Defendants-appellants seek reversal of such order of the Circuit Court.
The record indicates that plaintiffs in this cause owned 8 of the 9 lots in a subdivision located in the village of Cordova in Rock Island County. Plaintiffs petitioned the Whiteside County Board of School Trustees to detach these lots from the Erie school district and, also, petitioned the Rock Island County Board of School Trustees to annex the same lots to the Community Unit School District No. 100 in Rock Island County (hereinafter referred to as "District No. 100"). Plaintiffs were the only legal voters living on the subject lots. The Whiteside County Board of School Trustees denied the petition of plaintiffs, but the Rock Island County Board of School Trustees approved it. On appeal under the Administrative Review Act (1969 Illinois Revised Statutes, Ch. 110, par. 264 et seq.), the Circuit Court of Whiteside County reversed the Board's decision and ordered detachment.
 1, 2 The essential facts were stipulated by the parties to this cause. It was shown that in the event the petition was granted, both school districts would continue to have a population of more than 2,000 and an assessed valuation of more than $6,000,000; that no non-high school district would be created and that both districts would remain "compact and contiguous". Since the provisions of Section 7-4 of Ch. 122 of 1969 Illinois Revised Statutes would not be applicable, it was proper for the County Boards of School Trustees of Whiteside and Rock Island Counties to consider the petitions. On review in the Circuit Court, no new or additional evidence was authorized under the Administrative Review Act and the findings and conclusions of the administrative agencies on questions of fact are held to be prima facie true and correct. Factors and procedure *737 as outlined in the statutes of this State (1969 Illinois Revised Statutes, Ch. 122) are to be considered, and the question on appeal is basically to determine whether the Whiteside County Board of School Trustees acted in an arbitrary or capricious manner or whether their order was against the manifest weight of the evidence. No independent findings of fact were made by the Whiteside County Board of School Trustees as a basis for its decision. The parties stipulated that there were no children in the subject territory and that the loss of valuation to the Erie district, if detachment was authorized, would not jeopardize its present educational program. It was also shown that the educational opportunities at the two districts were equal.
Each of the respective school districts is a community unit district with several attendance centers. The fourth and sixth grades of District No. 100 were to be held in Cordova, approximately a 5-minute walk from petitioners. One petitioner was employed as a teacher at this school. The kindergarten, first and second grades and the high school grades of District No. 100 were taught at Coe, approximately 6 or 7 miles from petitioners' property. The third grade convened at Port Byron, approximately 5 miles away, and the fifth, seventh and eighth grades met at Hillsdale, approximately 11 or 12 miles away. The school center of the Erie district was approximately 14 miles from the property under consideration. Erie is the largest municipality in its District No. 1 and Port Byron is the largest municipality in District No. 100.
Evidence presented on behalf of petitioners indicated that plaintiff B. Paul Zejmowicz owned 7 of the 8 lots and lived on one of the lots. He planned to build and sell homes on the lots he and his wife owned. The community interest of these parties was centered in the village of Cordova and in Quad-Cities, where they shopped. He testified that he had only one friend or social acquaintance in Erie. He also testified that he had encountered sales resistance from several prospective customers for a home he had built when he informed them that the property was located in the Erie district rather than in District No. 100.
Another witness who testified on behalf of petitioner indicated that she and her husband had lived respectively in Port Byron and in Cordova prior to marriage and that these were the areas in which their friends were located. This witness testified that she taught in the fourth grade in District No. 100 in Cordova. This young couple anticipated that they would eventually have children although they had none at the time. The witness also testified that the couple had no contact with Erie other than to use the veterinarian who was located there. Part of the village of Cordova was located in District No. 100. This witness also stated that children living in Cordova, but attending school in Erie, would have *738 difficulty being with their school friends and, also, that car pools would be easier to arrange if the children attended District No. 100 schools.
No witnesses were offered on behalf of defendants-appellants, but a Whiteside County Board of School Trustees member stated that he was representing the Board, and, in response to a question as to why the Board objected to the petition, he stated that the Board objected to the removal of the area from the district because it should object to having any portion removed from the district; that the buses have to travel very little "relative to the issues", and that the area was voted into the district by the majority of the area. Maps were also supplied by the parties.
The Circuit Court of Whiteside County apparently could find no justifiable reason for the denial of the request for detachment. While an administrative body does have broad latitude in formulating its decisions, and a reviewing court would not presume to undertake to make decisions which are entrusted to such a body, the court does have the responsibility of finding that the decisions are in fact based upon some valid reasons. The Whiteside County Board of School Trustees recited no valid reasons nor was any evidence presented justifying denial of the petitioners' request for detachment. It is apparent from the record, that petitioners' presented evidence which would justify the relief requested. The stipulation of the parties indicates that the only issue truly before the Court on review was whether it is to the best interests of the schools of the area and the educational welfare of the pupils that the change in boundaries be granted.
We recognize that some stability is necessary and desirable in school district boundaries and that the boundaries should not be changed solely to accommodate the personal preferences of residents of the affected area. We have considered the matters at issue fully in recent cases decided in this Court (Wheeler v. County Board of School Trustees of Whiteside County, 62 Ill. App.2d 467, 210 N.E.2d 609; Ottawa Township High School District No. 140 of La Salle County v. County Board of School Trustees of La Salle County, 106 Ill. App.2d 439, 246 N.E.2d 138, 141). The principles announced in the Wheeler case are applicable in the case before us. The evidence in this cause clearly shows that the best interests of the schools in the area and the educational welfare of the pupils, on the basis of the record, would be best subserved by detachment. While no pupils live on petitioners' property at the present time, it is apparent that the property would be developed and settled and children and pupils will be present there in the future.
 3 The record indicates that petitioners in the lots are within the geographical, social and economic area revolving about the village of *739 Cordova and within the educational area of District No. 100. The community interest is centered in the area of District No. 100 rather than in the Erie district. Attendance at a school in close physical proximity with a child's home obviously serves the educational value of enhancing a child's ability (as well as that of his parents) to participate in school activities and to associate more closely with schoolmates with whom people might share and enhance learning experience. There is nothing in the record which indicates that any detriment would result to the Erie district if the premises are detached, other than loss of tax revenue from the particular lots. Substantial advantages, however, may result to the schools and potential pupils in District No. 100 as a result of the detachment.
We conclude, therefore, that the decision of the Circuit Court of Whiteside County in reversing the order of the Whiteside County Board of School Trustees was proper and should be affirmed.
Judgment affirmed.
STOUDER and SCOTT, JJ., concur.