James ADKINS, Appellant,

v.

DIVISION OF YOUTH SERVICES, DEPARTMENT OF INSTITUTIONS; and State Personnel Board, Appellees.

No. 84CA1202.

Colorado Court of Appeals,
Div. III.

Jan. 30, 1986.

Rehearing Denied March 20, 1986.

Certiorari Denied June 2, 1986.

Trimble, Tate & Nulan, Penfield W. Tate, II, Penfield W. Tate, III, Denver, for appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Deborah S. Waldbaum, Asst. Atty. Gen., Denver, for appellee Dept. of Institutions.

No appearance for appellee State Personnel Bd.

METZGER, Judge.

James Adkins seeks review of a final order of the Colorado State Personnel Board (Board) which upheld the decision of the appointing authority to dismiss him from his employment with the Gilliam Detention Center. We affirm.

Adkins had been employed by the State of Colorado for approximately ten years with an above average work record. On Thanksgiving Day in 1982, when Adkins reported to work at the Gilliam Detention Center in an intoxicated condition, a series of incidents occurred which led to charges being filed against him, and to his dismissal as of that day. The specific charges were:

"Failure to comply with standards of efficient service or competence.

1. Poor judgment to take a female resident to a non-functioning unit alone and without advising your co-worker of your whereabouts as you had been instructed.

2. Knowingly disregarding agency rules and regulations by giving residents cigarettes and accepting food that a parent brought in for a resident.

3. Being away from your main station and not performing a required duty of recording arrival times of oncoming staff for the 3 to 11 shift.

4. On November 25, 1983, reporting to your assigned shift (2–10) and going about your duties in an intoxicated/under the influence of drugs/alcohol state. This condition is not acceptable and did impede your judgment in assuring the safety and security of our residents and other actions that are questionable, i.e., cleaning an unused unit, advising staff that you were going to clean the dining area and that you wanted females because they do better work yet going to get boys from Unit B to assist, and taking no cleaning supplies or equipment to the areas where the residents were placed.

5. Placing a resident in an isolated area unsupervised for an unspecified period of time.

6. Using unnecessary force by placing your arm around the neck of P.M., a resident, and applying force to pull her down."

After his discharge, Adkins applied for unemployment compensation. A deputy awarded reduced benefits after concluding that Adkins had been terminated for failure to comply with standards of efficient service or competence. After hearing following Adkins' appeal of that determination, a referee affirmed the deputy's disposition. He found that all the allegations in paragraphs 2, 4, and 5 above had been proven, and that the allegation in paragraph 1, alleging that Adkins did not instruct his co-worker of his whereabouts, had been proven. He made no ruling on the allegations in paragraphs 3 and 6, nor on that part of paragraph 1 which alleged that Adkins showed "poor judgment to take a female resident to a non-functioning unit alone."

Besides seeking unemployment compensation, Adkins, contending that his dismissal was unwarranted, sought review of the

dismissal by the Personnel Board. Pursuant to §§ 24–4–105(3) and 24–50–125(3), C.R.S. (1982 Repl.Vol. 10), a hearing officer held a hearing and issued a decision.

The hearing officer, applying the doctrine of collateral estoppel, ruled that she was bound by the findings of the referee in the unemployment proceeding and adopted them verbatim as her own. She found, based on the evidence adduced at the personnel hearing, that the remaining allegation in paragraph 1 and those in paragraph 3 had been proven by undisputed evidence. However, she found that the allegation in paragraph 6 had not been proven by a preponderance of the evidence.

The hearing officer took administrative notice of the standard for dismissal used in previously adjudicated cases in the Colorado Personnel system. She then found that, though the offenses proven were serious enough to merit disciplinary action, dismissal was too harsh a penalty. Because Adkins had a ten-year record of faithful service to the state without prior corrective or disciplinary action on his record and the offense was a one-time occurrence, the hearing officer concluded the charges proven warranted, at most, suspension without pay from the time of dismissal to the date of the order, which was April 12, 1984.

The appointing authority then sought review, contending that the hearing officer erred in substituting her decision for that of the appointing authority by deciding that, though discipline was appropriate, termination was an excessive form of discipline. The review request was submitted upon the findings of facts and conclusions of law as contained in the initial decision.

While adopting the evidentiary findings of fact entered by the hearing officer, two of four members of the board participating in the review concluded that termination was within the range of alternatives available to a reasonable and prudent administrator. Accordingly, pursuant to § 24–50–103(6), C.R.S. (1985 Cum.Supp.), the Board upheld Adkins' termination.

## I.

Adkins first contends that the Board erred in reversing the findings of the hearing officer. We disagree.

Section 24–50–125.4(4), C.R.S. (1985 Cum. Supp.) provides that the Board shall conduct its review in accordance with § 24–4–105(15)(b), C.R.S. (1982 Repl.Vol. 10). Since the former section is procedural and was in effect at the time the Board rendered its decision, it was bound to follow the procedure stated. *See Nolan v. Industrial Commission*, 664 P.2d 253 (Colo.App. 1982); *Suley v. Board of Education*, 633 P.2d 482 (Colo.App.1981).

Section 24–4–105(15)(b) provides: "The findings of evidentiary fact, *as distinguished from ultimate conclusions of fact*, made by the hearing officer shall not be set aside by the agency on review of the hearing officer's initial decision unless such findings of evidentiary fact are contrary to the weight of evidence...." (emphasis added) Findings of ultimate fact involve a conclusion of law, or at least a determination of a mixed question of law and fact, and settle the rights and liabilities of the parties. *See Lee v. State Board of Dental Examiners*, 654 P.2d 839 (Colo.1982).

Here, the Board found that, based upon the evidentiary facts as found by the hearing officer, Adkins' termination was within the range of alternatives available to a reasonable and prudent administrator. This was an ultimate conclusion of fact, and therefore, it must be upheld on appeal unless the Board's decision was arbitrary or capricious, an abuse of discretion, or unsupported by substantial evidence. *See* § 24–4–106(11)(e), C.R.S. (1982 Repl.Vol. 10); § 24–4–106(7), C.R.S. (1982 Repl.Vol. 10); *Stevens v. Civil Service Commission*, 172 Colo. 446, 474 P.2d 156 (1970).

Based upon the evidence we are unable to say as a matter of law that the Board committed any errors. Prior to his dismissal, Adkins was admittedly a good employee. However, as an assistant shift supervisor he was responsible for the care and safety of the lives of many children. To report for work in an intoxicated condition

and subsequently to disregard safety and security regulations were breaches of the responsibility with which he was entrusted. The standard of review requires that we uphold the decision of the Board.

## II.

Adkins also contends that the Board improperly applied § 24–50–103(6), C.R.S. (1985 Cum.Supp.) as a justification for upholding his discharge. He argues that this proceeding was commenced prior to the effective date of that statute, and therefore, it was inapplicable. He further argues that the tie vote (2 in favor of upholding the appointing authority, 2 against) reached by the Board should have resulted in an affirmance of the hearing officer's decision. We disagree.

Section 24–50–103(6) provides that an action of the appointing authority may be reversed by the board "only if at least three members of the board find the action to have been arbitrary, capricious, or contrary to rule or law." We view this statute as a matter of remedial or procedural law, and therefore, it is applicable to the Board's review. *Suley v. Board of Education, supra.* Consequently, the Board was correct in concluding that the tie vote precluded it from reversing the appointing authority's dismissal of Adkins.

Adkins' remaining contentions are without merit.

Order affirmed.

BERMAN and TURSI, JJ., concur.