ROBERTSON, Presiding Judge.
Marcus W. Smith appeals from a summary judgment entered by the Barbour County Circuit Court on his claims against the City of Eufaula Planning Commission (“the Commission”) and the City of Eufau-la (“the City”). We affirm.
Because the pertinent facts giving rise to Smith’s claims in this case are undisputed, we review the trial court’s application of law to those facts to determine whether the defendants were entitled to a judgment as a matter of law. Carpenter v. Davis, 688 So.2d 256, 258 (Ala.1997). No presumption of correctness attaches to the decision of the trial court on a summary-judgment motion, and our review is de novo. Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025 (Ala.Civ.App.1993) (citing Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635 (Ala.1992)).
In February 1997, Smith presented to the Commission a “Planned Unit Development” (“PUD”) plan wherein he proposed to develop “Eufaula Downs,” a 36-acre parcel of real property owned by his parents, as “a planned private community for manufactured housing.” The Commission tabled the matter at its April 15, 1997, hearing, but (over numerous objections by surrounding landowners) conditionally gave preliminary approval of the plan in May 1997, provided that Smith could meet certain conditions, including the provision of (1) perimeter fencing and (2) an engineering report regarding the adequacy of water pressure in the area with respect to fire control. However, in August 1997, the City’s engineer informed the Commission that the development did not, in his opinion, have sufficient water flow and pressure, and the Commission’s conditional approval was withdrawn. Smith then petitioned the circuit court for a writ of mandamus compelling the trial court to compel the Commission to grant him a certificate of approval of his plan; that petition was denied in March 1998. No appeal was taken from that judgment.
Smith filed a new, yet substantially identical, PUD plan with the Commission on April 29, 1998, again requesting preliminary approval. At that time, Smith had not built a perimeter fence, but he had arranged for water testing in the area of *672 Eufaula Downs. The Commission considered Smith’s renewed proposal on May 18, 1998. Again, vocal opposition to Smith’s plan came from surrounding landowners. The minutes of the Commission meeting read, in pertinent part:
“The next item was a request by Mark Smith for preliminary plat approval of a Planned Unit Development on Bakerhill Highway. Mr. Smith said he has had an initial planning meeting with city officials and has received no correspondence from the city regarding any problems with his proposal. Chairman Schaeffer pointed out the plan has been on the table for about a year, and questioned what made this application different from previously submitted plans. Mr. Smith said [the] previous basis for denial was inadequate water flow and pressure. He said Bakerhill Water Authority, which serves the area, has greatly improved its water distribution to the area and tests have been made which indicate the water flow and pressure have been increased. Joe Ed Carr, chairman of the Bakerhill Water Authority, said an additional eight-inch line has been placed along Highway 481 South that improves water delivery to the Hwy. 131 (Bakerhill Highway) area. Eufaula Fire Chief David Anderson said that he has checked several hydrants in the area and the tests indicate there is adequate water there. Anderson said his only question is how long that will last. Anderson said the ISO [Insurance Services Office] will recognize a fire hydrant at 250 gallons per minute, but needed water available to fight a fire is 500 gallons per minute. Chairman Schaeffer said the City of Eufaula’s engineering firm, Goodwyn, Mills and Ca-wood, has concurred with the calculations of Mr. Smith’s engineer that the water flow will meet standards required by ISO and the Eufaula Fire Department. Mr. Schaeffer noted, however, the City’s engineer has not tested the area in question; Goodwyn, Mills and Cawood’s concurrence was based only on calculations presented by Mr. Smith’s engineer. After lengthy discussion, Mr. Schaeffer entertained a motion to approve or deny Mr. Smith’s application. There was none. Mr. Schaeffer again called for a motion to approve or deny the proposal. Motion was made by Mr. McKenzie to approve the preliminary plan for Mr. Smith’s PUD application. The motion was seconded by Rev. White. Roll call vote was as follows: Yeas: McKenzie, White, and Edmunds. Nays: Jaxon, Champion and Schaeffer. Motion was denied due to a tie vote.”
On June 30, 1998, Smith filed a civil action against the Commission and the City, alleging that the Commission had not given “a legitimate reason for the denial” of his plan “bearing a substantial relation to public health, safety, morals or general welfare” within 30 days after the submission of the application, and that the Commission’s denial was arbitrary, capricious, and unreasonable. He sought a writ of mandamus compelling the Commission to approve his plan and sought unspecified damages pursuant to 42 U.S.C. § 1983. Smith moved for a partial summary judgment on his mandamus claim, supported by the Commission’s minutes and his deposition transcript. The City and the Commission filed a response and a cross-motion for a summary judgment as to all claims, supported by Smith’s earlier mandamus petition, the transcript of the trial of that petition, and Smith’s 1998 PUD application. Smith then filed his own affidavit and affidavits of his parents. The trial court at first denied both summary-judgment motions; however, when the City and the Commission filed a renewed summary-judgment motion, attaching an opinion of the attorney general regarding the general procedures of municipal planning commissions, the trial court entered a summary judgment in favor of the City and the Commission. Smith appealed from the summary judgment to the Alabama Supreme Court, but that court transferred the appeal to this court on the *673 stated basis that that court lacked appellate jurisdiction.
Smith does not allege any error with respect to any. particular claim; rather, his stated issue is whether the trial court erred in entering the summary judgment “based upon the Attorney General’s opinion dated April 1, 1999.” However, Smith’s arguments reveal that the propriety of the summary judgment is not controlled by the effect of that opinion alone. The real issue in the case appears to be whether the grounds stated by the Commission for disapproving Smith’s second PUD application were legally sufficient.
Section ll-52-32(a), Ala.Code 1975, states that a municipal planning commission shall “approve or disapprove” a plat within 30 days after submission. That statute also provides that “[t]he ground of disapproval of any plat shall be stated upon the records of the commission.” While § 11 — 52—32(a) refers to “plats,” the Alabama Supreme Court has held that PUDs, although a “novel zoning concept ... for the reclassification of a relatively small area within a large zoned area,” are subject to the same legal principles as traditional plats, which are deemed to become part of a municipal plan upon final approval thereof. City of Tuscaloosa v. Bryan, 505 So.2d 330, 335-37 (Ala.1987) (stating that standard of review applicable to a decision granting a PUD application is the same as that applicable to a decision to rezone an area). Therefore, we reject the argument advanced by the City and the Commission that § 11-52-32 is not applicable to Smith’s application.
Section 11-52-31, Ala.Code 1975, states that the regulations or practice of a municipal planning commission may provide for “tentative approval” of a plat, as Eufaula has done. We are persuaded by the attorney general’s opinion that § 11-52-31 “does not specify the number of votes needed to approve a tentative subdivision plat” such as Smith’s, and that because the Commission has not adopted regulations addressing that issue, “a majority of the quorum present and voting is required” to give tentative approval. Op. Att’y Gen. No. 99-00154 (1999). It follows, then, that the Commission’s tie vote on Smith’s plan constituted a denial of approval of that plan. Accord, 83 Am.Jur.2d Zoning & Planning § 811 (1992 & Supp. 1999) (“An evenly divided vote by a zoning hearing board constitutes a denial of the relief sought from the board.”); 101A C.J.S. Zoning & Land Planning § 259 (1979 & 1999 Supp.) (where required number of votes is not attained, the application may be deemed denied, despite tie vote). However, we cannot accept the argument that the Commission is excused from stating grounds for its denial of Smith’s plan because of the particular nature of the rejection as a tie vote.. Therefore, we consider the minutes of the Commission in their entirety, along with the history of Smith’s interaction with the Commission, in deciding whether the Commission adequately “stated” its “grounds of disapproval.”
In considering Smith’s second application, the Commission would necessarily have had knowledge that it had previously rejected a similar application because, among other reasons, Smith had failed to demonstrate that adequate water pressure would be available in the planned manufactured-home development. The minutes reveal that the chairman of the Commission specifically noted that Smith’s plan was not new, and that he asked what made Smith’s second application different from the first, and that in response Smith listed only the inadequate water flow and pressure ground for the denial when the Commission had actually stated two grounds for failing to grant preliminary approval in May 1997: the lack of both adequate water pressure and a perimeter fence. The City’s fire chief indicated that although “adequate” water (500 gallons per minute) was present at the time of the hearing, he questioned how long the water pressure would last; the chairman of the Commis *674 sion then noted that the City’s engineers had no personal knowledge from testing whether the water pressure was sufficient. Finally, the minutes reveal that a “lengthy discussion” followed, and Smith testified at his deposition that that “discussion” would have included the protests of neighboring landowners.
Under the extraordinary facts of this case, we conclude that the extensive discussion in the Commission’s minutes of Smith’s second application, and particularly its members’ concerns about water pressure in the area, when coupled with the notation of denial, constitute a sufficient recording of the grounds of the Commission’s disapproval of Smith’s application to comply with § ll-52-32(a). Recorded concerns about whether sufficient water pressure will be available to fight fire in a development containing numerous manufactured homes on subdivided lots are sufficiently connected to “public health, safety, morals or general welfare” to require this court to sustain the decision of the Commission to deny tentative approval to Smith’s plan. City of Mobile v. Waldon, 429 So.2d 945, 947 (Ala.1983). Thus, the trial court properly entered the summary judgment in favor of the City and the Commission.
Based upon the foregoing facts and authorities, the trial court’s judgment is due to be affirmed.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.