COOK COUNTY REPUBLICAN PARTY, by Gary J. Skoien, Chairman, Petitioner-Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.—COOK COUNTY REPUBLICAN PARTY, by Gary J. Skoien, Chairman, Petitioner-Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.—COOK COUNTY REPUBLICAN PARTY, by Gary J. Skoien, Chairman, Petitioner-Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.—COOK COUNTY REPUBLICAN PARTY, by Gary J. Skoien, Chairman, Petitioner-Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.—COOK COUNTY REPUBLICAN PARTY, by Gary J. Skoien, Chairman, Petitioner-Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.—COOK COUNTY REPUBLICAN PARTY, by Gary J. Skoien, Chairman, Petitioner-Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.—COOK COUNTY REPUBLICAN PARTY, by Gary J. Skoien, Chairman, Petitioner-Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.—COOK COUNTY REPUBLICAN PARTY, by Gary J. Skoien, Chairman, Petitioner-Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.—COOK COUNTY REPUBLICAN PARTY, by Gary J. Skoien, Chairman, Petitioner-Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.—COOK COUNTY REPUBLICAN PARTY, by Gary J. Skoien, Chairman, Petitioner-Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.

First District (1st Division)    Nos. 1—05—3407 through 1—05—3416 cons.

Opinion filed December 17, 2007.—Rehearing denied January 31, 2008.

GORDON, ROBERT E., J., concurring in part and dissenting in part.

Stephen F. Boulton, of Cook County Republican Party, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary Feinerman, Solicitor General, and Timothy K. McPike, Assistant Attorney General, of counsel), for appellee State Board of Elections.

Mathias W. Delort and Aaron G. Allen, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellees 4th Ward Democratic Organization, 5th Ward Democratic Organization, Leslie A. Hairston, 40th Ward Regular Democratic Organization, Patrick J. O'Connor, Democratic Party of 49th Ward, and David Fagus.

Burton S. Odelson, of Odelson & Sterk, Ltd., of Evergreen Park, for appellees 7th Ward Democratic Organization, Anthony Beale, and Ed H. Smith.

Michael E. Lavelle, of Lavelle & Motta, Ltd., of Chicago, for appellee Theodore Thomas.

Thomas A. Jaconetty and James P. Nally, of James P. Nally, P.C., both of

Chicago, for appellees 31st Ward Democratic Campaign Fund, Joseph Berrios, 39th Ward Regular Democratic Organization, James D'Amico, and Randy Barnette.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

This is a consolidated appeal brought by the chairman of the Cook County Republican Party, challenging the Illinois State Board of Elections' (Board's) dismissal, without a public hearing, of 10 complaints alleging Election Code (10 ILCS 5/1—1 *et seq.* (West 2004)) violations. The respondents are Chicago Democratic ward organizations, ward chairmen and ward committeemen. Petitioner asks this court to reverse the Board's dismissal in each case and remand the causes for a public hearing on the merits. We affirm the Board.

Our state constitution requires that a state board of elections be established to "have general supervision over the administration of the registration and election laws throughout the State." Ill. Const. 1970, art. III, §5. Although the constitution delegates to the legislature the authority to determine the size, manner of selection and compensation of the board, the constitution restricts the political affiliation so that "[n]o political party shall have a majority of members of the Board." Ill. Const. 1970, art. III, §5. The legislature created a board with eight members, four of whom must belong to the same political party as the Governor and four of whom must be affiliated "with the political party whose nominee for Governor in the most recent general election received the second highest number of votes." 10 ILCS 5/1A—2 (West 2004). "*[Five] votes are necessary for any action of the Board to become effective.*" (Emphasis added.) 10 ILCS 5/1A—7 (West 2004).

The Board is responsible for supervising the administration of the Election Code. 10 ILCS 5/1A—8(12) (West 2004). Among other things, the Election Code: (1) prohibits the appropriation of public funds for political or campaign purposes to any candidate or political organization (10 ILCS 5/9—25.1(b) (West 2004)); (2) requires every local political committee to file reports of campaign contributions, including in-kind contributions (10 ILCS 5/9—10(a), 9—1.4, 9—1.12 (West 2004)); and (3) requires every local political committee to file a statement of organization (10 ILCS 5/9—3 (West 2004)). Any person who believes the Election Code has been violated may file a complaint with the Board. 10 ILCS 5/9—20 (West 2004).

Once a complaint is filed, a closed preliminary hearing is held to "elicit evidence on the question whether the complaint was filed on justifiable grounds, and having some basis in fact and law." 26 Ill. Adm. Code §125.252, amended at 14 Ill. Reg. 10832 (eff. June 22,

1990); see also 10 ILCS 5/9—21 (West 2004). A hearing officer is appointed by the Board to preside over the closed preliminary hearing. 26 Ill. Adm. Code §125.245, amended at 14 Ill. Reg. 10832 (eff. June 22, 1990). The hearing officer's role is limited: he considers evidence presented by the parties and prepares a recommendation on whether the complaint was filed on justifiable grounds. 26 Ill. Adm. Code §125.252(d), amended at 14 Ill. Reg. 10832 (eff. June 22, 1990). The general counsel for the Board reviews the hearing officer's recommendation and the evidence presented at the closed preliminary hearing. 26 Ill. Adm. Code §125.253, amended at 14 Ill. Reg. 10832 (eff. June 22, 1990). The general counsel then makes his own recommendation to the Board. 26 Ill. Adm. Code §125.253, amended at 14 Ill. Reg. 10832 (eff. June 22, 1990). The recommendations are presented to the Board, which then must decide whether the complaint was filed on justifiable grounds. 26 Ill. Adm. Code §125.262(a), amended at 24 Ill. Reg. 14203 (eff. September 11, 2000).

A complaint not filed on justifiable grounds must be dismissed, while a complaint filed on justifiable grounds will proceed to a public hearing. *Illinois Republican Party v. Illinois State Board of Elections,* 188 Ill. 2d 70, 74, 720 N.E.2d 231 (1999); 26 Ill. Adm. Code §125.262(a), amended at 24 Ill. Reg. 14203 (eff. September 11, 2000). At the heart of this appeal is the following language from the Election Code: *"If the Board fails to determine that the complaint has been filed on justifiable grounds, it shall dismiss the complaint without further hearing."* (Emphasis added.) 10 ILCS 5/9—21 (West 2004). A dismissed complaint can be appealed directly to the appellate court. 10 ILCS 5/9—22 (West 2004).

Petitioner filed with the Board 10 complaints against the named respondents in this appeal. Each complaint alleged respondents violated sections 9—10(a) and 9—25.1(b) of the Election Code by accepting, but not disclosing, in-kind contributions in the form of office space paid for in part with public funds. Three of the ten complaints also alleged violations under section 9—3 of the Election Code for failing to file a statement of organization as a political committee.

A simultaneous, closed preliminary hearing was held on all 10 complaints. Evidence was presented that respondents used City of Chicago aldermanic offices for political purposes. Evidence was also presented to show that the City of Chicago was paying, at least in part, for the office space and that respondents failed to report the alleged contributions to the Board. In the three cases in which violations of section 9—3 of the Election Code were alleged, evidence was presented that those respondents failed to file statements of organization.

The hearing officer who presided over the closed preliminary hearing found all but one of the complaints were filed on justifiable grounds and recommended that those complaints proceed to public hearings. With respect to the complaint filed against the 5th Ward Regular Democratic Organization and Leslie A. Hairston, chairman and committeeman (Hairston), the hearing officer found the evidence did not support petitioner's allegations. With respect to the complaint filed against Ed H. Smith, 28th Ward Democratic committeeman (Smith), the hearing officer found sufficient evidence to proceed to a public hearing on the allegation that Smith failed to file a statement of organization, but insufficient evidence to proceed on petitioner's allegations that Smith was using aldermanic offices paid for by the City of Chicago to conduct political activities.

The Board met in executive session to rule on the complaints. The Board's general counsel, who was present at the executive session, said he found the evidence presented at the closed preliminary hearing insufficient to support the allegations and recommended that all 10 complaints be dismissed. The Board, in a five to three vote, accepted the recommendations of the hearing officer and its general counsel with respect to the Hairston complaint. The Board dismissed that complaint for lack of justifiable grounds. Also in a five to three vote, the Board dismissed the Smith complaint in its entirety for lack of justifiable grounds. The Board reached a tie vote on the remaining eight complaints and dismissed those complaints in compliance with the statute. See 10 ILCS 5/9—21 (West 2004). The Board issued a final, written order in each case dismissing the complaint. Petitioner appeals.

We first address the two complaints that were dismissed by majority votes. Unlike the tie-vote dismissals, the Board found that petitioner did not allege justifiable grounds to sustain these complaints. In doing so, the Board considered the evidence presented by the parties during the closed preliminary hearing and determined the evidence did not meet the legal standard set forth in section 9—21 of the Election Code: that the complaints were filed on justifiable grounds. See 10 ILCS 5/9—21 (West 2004). Because the Board's decisions involve mixed questions of law and fact, we employ a clearly erroneous standard of review and will not reverse the Board unless, after reviewing the entire record, we are " 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395, 763 N.E.2d 272 (2001), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

■ We begin with the complaint filed against Hairston. Petitioner alleged Hairston violated sections 9—10(a) and 9—25.1(b) of the Election Code by using office space paid for in part by the City to conduct political activities and by failing to report this as an in-kind contribution. See 10 ILCS 5/9—10(a), 9—25.1(b) (West 2004). As noted, to survive dismissal and proceed to a public hearing, the Board must find that the complaint was filed on justifiable grounds. This court has defined "justifiable grounds" to mean "some preliminary showing that the complaint was based on reasonable grounds and that the 'violations' alleged were within the ambit of the Board's cognizance under the statute." *Troy v. State Board of Elections*, 84 Ill. App. 3d 740, 742, 406 N.E.2d 562 (1980). The petitioner has the burden of showing "with some degree of substance" that the respondent violated the Election Code. See *Troy*, 84 Ill. App. 3d at 742.

Here is the evidence presented at the closed preliminary hearing on the Hairston complaint. Thomas M. Swiss, Cook County Republican Party executive director, testified he visited Hairston's office on August 22, 2005. The signage on the office indicated Hairston was alderman and 5th Ward Regular Democratic committeeman. Swiss spoke to a receptionist inside the office who told him political activities occurred at that location. The receptionist did not testify at the hearing and Swiss did not himself see political activities during his visit. Hairston testified that all political activity for the 5th Ward Regular Democratic Organization is conducted at her home and that her office is used solely for nonpolitical aldermanic purposes. Hairston admitted that the 5th Ward Regular Democratic Organization paid a portion of the rent for the aldermanic office.

The hearing officer found the evidence was insufficient to warrant a public hearing. He explained:

"While a review of Ms. Hairston's testimony reveals that she was argumentative, combative and, at times, evasive when [cross-] examined by [petitioner], she was clear and unequivocal in her denial that political activities were conducted at [the aldermanic office].

The decision of Ms. Hairston to subject herself to perjury if she provided untruthful testimony to the Board[ ] persuades this Hearing Officer that Ms. Hairston was telling the truth that she was unaware of any political activities occurring [at the aldermanic office]."

The hearing officer recommended the complaint be dismissed for lack of justifiable grounds and the Board adopted this recommendation.

■ Petitioner argues on appeal that Hairston's testimony did not rebut evidence that Hairston used her aldermanic office for political

purposes. We will not reweigh the evidence. See *City of Belvidere v. Illinois State Labor Relations Board,* 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998) ("[i]n examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of an administrative agency"). Our consideration is limited to whether the Board's findings and application of those findings to the law are clearly erroneous. We conclude from the record before us that they are not. The Board's decision to dismiss the complaint for lack of justifiable grounds is supported by Hairston's testimony that political activity did not take place at the aldermanic office. That decision is affirmed.

■ We next consider the complaint filed against Ed Smith. That complaint alleged violation of section 9—3 of the Election Code for failing to file a statement of political organization. 10 ILCS 5/9—3 (West 2004). The complaint also alleged violations of sections 9—10(a) and 9—25.1(b) for accepting, but not reporting, in-kind contributions in the form of office space paid for in part with public funds. See 10 ILCS 5/9—10(a), 9—25.1(b) (West 2004).

The evidence at the closed preliminary hearing showed that Smith was acting as a committeeman for the 28th Ward Democratic Organization. The evidence also showed that the Board of Elections Web site does not name "Smith" or the "28th Ward Democratic Organization" as a registered organization. Thomas Swiss testified at the hearing that he visited the aldermanic office in the 28th Ward on August 10, 2005. The signage on the building indicated it housed both the aldermanic office and the office of the 28th Ward Democratic Organization. Swiss said he spoke to a receptionist inside the aldermanic office who said political activities occurred at the location. The receptionist did not testify at the hearing and Swiss himself did not witness such activities during his visit. Jason Ervin testified on behalf of Smith that he owned the building that housed the aldermanic office. Ervin said he is the secretary for the 28th Ward Democratic Organization and denied that political activity took place in the offices rented by the city. Ervin said he conducted all political activity for the 28th Ward Democratic Organization out of either his home or his own office.

The hearing officer found the evidence was sufficient to proceed to an open hearing on the issue of whether Smith violated section 9—3 of the Election Code by failing to file a statement of organization. The hearing officer found insufficient evidence to proceed to an open hearing on the remaining two allegations. The hearing officer relied on Ervin's testimony that no political activities occurred inside the offices rented by the City and used for aldermanic purposes.

The Board accepted the hearing officer's recommendation to dismiss the allegations that Smith violated sections 9—10(a) and 9—25.1(b) of the Election Code. But the Board rejected the recommendation to hold a public hearing on whether Smith violated section 9—3 of the Election Code. The Board relied on new evidence not before the hearing officer that a statement of organization was filed by the "Committee for Ed Smith." See 10 ILCS 5/9—1.7 (West 2004) (" 'Local political committee' means the candidate himself or any individual, trust, partnership, committee, association, corporation, or other organization or group of persons"). The Board's decision finds support in the evidence and we see no clear error. The dismissal of petitioner's complaint against Smith is affirmed.

■ We now consider the eight complaints that were dismissed because the Board could not muster a five-vote majority. See 10 ILCS 5/9—21 (West 2004). In 1999 our supreme court addressed whether a public hearing is required on a complaint dismissed for failure of the Board to decide by a majority vote whether justifiable grounds existed for the filing. *Illinois Republican Party*, 188 Ill. 2d at 71. At the time of that decision, section 9—21 of the Election Code read: "If the Board determines that the complaint has not been filed on justifiable grounds, it shall dismiss the complaint without further hearing." 10 ILCS 5/9—21 (West 1996). The statute did not address the consequences of a tie vote. 10 ILCS 5/9—21 (West 1996). After noting that at least "[five] votes are necessary for any action of the Board to become effective" (10 ILCS 5/1A—7 (West 1996)), the court concluded:

"[I]t is clear that the statute contemplates a public hearing for those complaints not dismissed by the Board. In the sentence which immediately follows the description of the procedure for dismissing a complaint, section 9—21 requires that the Board afford 'an opportunity for a public hearing' before taking any action to correct an alleged violation of the Code. [Citation.] This requirement of a public hearing is consistent with the broader purposes of the Code's campaign finance disclosure provisions. [Citation.] By requiring that every complaint not dismissed by a majority of the Board proceed to a public hearing, the Code effectively promotes the goals of candor and openness underlying these substantive provisions." *Illinois Republican Party*, 188 Ill. 2d at 74.

In 2001, the General Assembly amended section 9—21 to require that the Board dismiss a complaint in the event five votes cannot be reached. The statute now reads: "If the Board fails to determine that the complaint has been filed on justifiable grounds, it shall dismiss the complaint without further hearing." 10 ILCS 5/9—21 (West 2004). The statute as amended was in effect at the time petitioner filed the

complaints at issue here and was relied on by the Board to dismiss the eight remaining complaints where it was deadlocked. Petitioner asks this court to vacate the Board's dismissals and remand for public hearings on those complaints.

During oral argument, we asked the parties to submit supplemental briefs. We wanted to know whether our review is limited to deciding whether the Board complied with the amended statute or whether we could reach the merits of the appeal and decide whether the complaints were filed on justifiable grounds. Both the Attorney General, who represents the Board, and petitioner have returned to the court with an aligned position: that this court can and should review the substantive allegations of the complaints and decide whether there were justifiable grounds to warrant a public hearing.

The Attorney General cites five grounds to support the position that this court should undertake a proactive role and review the merits of the complaints. First, the Election Code requires review of all complaints dismissed without a public hearing. 10 ILCS 5/9—22 (West 2004). Second, there is no statutory bar to judicial review. Third, there is a sufficient factual basis in the record to perform appellate review. Fourth, there is precedent supporting judicial review of tie-vote administrative decisions. And finally, failure to review tie-vote dismissals of a bipartisan agency would "stand the policy of checks-and-balances on its head." Petitioner adopts the Attorney General's argument and adds that, if we decide we cannot reach the merits of the eight tie-vote dismissals, we should find section 9—21 as amended unconstitutional.

We do not dispute the Attorney General's first two points: that all complaints dismissed without a public hearing are subject to judicial review and there is no statute barring such review. But this does not resolve the question of the scope of our review in this case. If, as the Attorney General and petitioner urge, this court reviews the merits of each complaint, what is the standard of review we must apply and what is the decision of the Board we must review? Had the Board decided whether justifiable grounds existed for filing the complaints, we would apply the clearly erroneous standard of review and decide whether the Board's conclusions are supported by the record and applicable law. See *AFM Messenger Service*, 198 Ill. 2d at 395 (administrative agency decisions involving mixed questions of law and fact are reviewed for clear error). But the Board made no such finding here.

Although neither the Attorney General nor petitioner specifically says so in its supplemental brief—neither party sets out a standard of review—their argument is such that we would be compelled to apply *de novo* review to decide whether the complaints were filed on justifi-

able grounds. This is because the Board made no findings of fact or conclusions of law with respect to the complaints. So the parties ask that *we* make these findings by reviewing the complaints, the evidence presented at the closed preliminary hearing and the recommendations of the hearing officer and the Board's general counsel. Although the record is sufficient to perform such review—we have the same record before us as did the Board—to do so would be contrary to principles of administrative review. See *Richards v. Board of Education of Township High School District No. 201*, 21 Ill. 2d 104, 110, 171 N.E.2d 37 (1960) ("[i]t is axiomatic that where the legislature empowers [an] *** administrative agency to perform certain acts, courts will not interfere with the exercise of such powers, or substitute their discretion, unless the action of the *** agency is palpably arbitrary, unreasonable or capricious"); *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992) ("on administrative review, it is not a court's function to *** make an independent determination of the facts"); *Zejmowicz v. County Board of School Trustees*, 133 Ill. App. 2d 735, 738, 272 N.E.2d 783 (1971) ("a reviewing court [should] not presume to undertake to make decisions which are entrusted to [an administrative agency]"). So, although we agree with the Attorney General's third point—that the record is sufficient to perform an independent review of whether the complaints were filed on justifiable grounds—we will not perform such review or find that the action of the Board was arbitrary, unreasonable or capricious when the Board did what the statute directed it to do in case of tie votes.

The Attorney General cites cases from other jurisdictions that have reviewed tie-vote decisions by an administrative agency, the most relevant of which is *Democratic Congressional Campaign Committee v. Federal Election Comm'n*, 831 F.2d 1131 (D.C. Cir. 1987) (*DCCC*). That case, like this one, concerned the default dismissal of a complaint for failure of a bipartisan agency to reach the majority vote required to take action on the complaint. *DCCC*, 831 F.2d at 1132-33. Although the court held that the decision was reviewable to the extent the agency may have acted contrary to the law, the court remanded the case to the agency for an "opportunity to set its precedent in order so that it, and not a court of review, will serve as primary decisionmaker in the area Congress has committed, initially, to the [agency's] charge." *DCCC*, 831 F.2d at 1133. The court refused to decide the merits of the complaint itself. *DCCC*, 831 F.2d at 1133.

At issue here is not whether the Board's decision was contrary to the law. There is no question that the Board acted in compliance with section 9—21 of the Election Code by dismissing the eight complaints

for failure to determine whether justifiable grounds for those complaints existed. 10 ILCS 5/9—21 (West 2004). There was no similar statute in *DCCC* and so whether such dismissals are substantively reviewable was not considered.

The Attorney General cites several cases that address the procedural effect of tie votes. See *Kuszyk v. Zoning Hearing Board of Amity Township*, 834 A.2d 661 (Pa. Commw. 2003); *Tall Trees Construction Corp. v. Zoning Board of Appeals*, 97 N.Y.2d 86, 761 N.E.2d 565, 735 N.Y.S.2d 873 (2001); *Smith v. City of Eufaula Planning Comm'n*, 765 So. 2d 670 (Ala. App. 2000); *Hirschfield v. Board of County Commissioners*, 944 P.2d 1139 (Wyo. 1997); *Battaglia Fruit Co. v. City of Maitland*, 530 So. 2d 940 (Fla. Dist. App. 1988); *Adkins v. Division of Youth Services, Department of Institutions*, 720 P.2d 626 (Colo. App. 1986). The Attorney General also cites cases that address whether a tie vote amounts to agency action. See *Energy Pipeline Co. v. Pennsylvania Public Utility Comm'n*, 541 Pa. 252, 662 A.2d 641 (1995); *Siegel v. Arizona State Liquor Board*, 167 Ariz. 400, 807 P.2d 1136 (Ariz. App. 1991); *Huck v. Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 525 A.2d 940 (1987). Unlike those cases, the General Assembly here has provided clear statutory direction requiring the Board to dismiss a complaint that cannot be upheld by a majority vote. See 10 ILCS 5/9—21 (West 2004). It is undisputed that the dismissal constitutes action reviewable by this court.

Although our state appellate court once held a deadlock vote by the Board under section 9—21 of the Election Code was judicially reviewable (see *Illinois Republican Party v. State Board of Elections*, 294 Ill. App. 3d 915, 920, 691 N.E.2d 169 (1998)), that decision was subsequently reversed. See *Illinois Republican Party*, 188 Ill. 2d at 75. Also, the case was decided before section 9—21 was amended to require dismissal of a complaint in the event the Board failed to determine whether justifiable grounds existed for the filing.

We have not found a case arising in this state or in another jurisdiction with facts similar to the ones here. For this reason, we are not persuaded by the Attorney General's fourth point that there is sufficient precedent for this court's *de novo* review of the complaints. To the contrary, we find that the cases cited by the Attorney General support the conclusion that review of tie-vote dismissals should be limited to determining whether the administrative agency has acted contrary to law. See *DCCC*, 831 F.2d at 1135; *Tall Trees Construction*, 97 N.Y.2d at 92-93, 761 N.E.2d at 570, 735 N.Y.S.2d at 878; *Smith*, 765 So. 2d at 672-73. It is undisputed here that the Board acted in conformity with the law by dismissing the eight complaints where it could not reach a majority vote.

The final point made by the Attorney General is that failure to decide the merits of the complaints themselves is contrary to the system of checks and balances. The Attorney General explains: "To hold that [Board] dismissals by majority vote are reviewable, but dismissals by tie-vote are not, would mean that *bipartisan* dismissals are subject to judicial review but votes most likely to be *partisan* dismissals are not." (Emphasis in original.) The Attorney General cites *Board of Commissioners v. Dayton Development Co.*, 91 Nev. 71, 76, 530 P.2d 1187, 1190 (1975), where the Supreme Court of Nevada extended the scope of its *mandamus* authority to reach the merits of a decision that could not be reached by majority vote of the underlying administrative agency. The court explained: "Any other view would permit the possible loss of valuable rights by reason of the Board's failure to decide the issue. We are not willing to countenance such a result." *Dayton Development*, 91 Nev. at 76, 530 P.2d at 1190.

The separation of powers clause contained in our state constitution reads: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, §1. "It is a familiar principle of constitutional law that none of the three departments of our government may exercise powers properly belonging to either of the other two." *West End Savings & Loan Ass'n v. Smith*, 16 Ill. 2d 523, 525, 158 N.E.2d 608 (1959). Our supreme court has specifically held that where authority has been conferred on an administrative agency to perform functions of an executive nature, provisions for trial *de novo* in courts of law violate the separation-of-powers principle. *West End Savings & Loan*, 16 Ill. 2d at 525. It is for this reason that we decline to decide *de novo* whether the complaints filed in this case were filed on justifiable grounds.

The question again arises: what is the scope of our review? The Election Code authorizes "any person who files a complaint on which a hearing was denied" to seek judicial review in this court. 10 ILCS 5/9—22 (West 2004). We have already determined that this court is without authority to decide *de novo* whether the complaints were filed on justifiable grounds and it is undisputed that the Board made no factual findings with respect to the complaints. So our review is limited to the only Board decision discernable from the record before us: the dismissal of the complaints based on the statutory directive of section 9—21 of the Election Code. We find the Board complied with the statute and affirm on this ground.

We do not address petitioner's argument that section 9—21 is unconstitutional because it immunizes from judicial review procedural dismissals due to tie votes. This issue was not raised in the parties'

original briefs to this court. The original briefs assumed we could reach the substantive allegations of the complaints. The supplemental briefs we ordered were to address the narrow issue of our scope of review. Petitioner's additional argument on the constitutionality of section 9—21 is not properly before the court. See *Orlowski v. Village of Villa Park Board of Fire & Police Commissioners*, 273 Ill. App. 3d 42, 652 N.E.2d 366 (1995) (general rule that points not argued in appellant's brief are waived applies to appeals for administrative review).

The dissent argues that the waiver rule should be relaxed to address the constitutionality of the statute. But to do so would violate "the prohibition against deciding constitutional issues without first exhausting all potential nonconstitutional grounds for resolving the case." *In re E.H.*, 224 Ill. 2d 172, 179, 863 N.E.2d 231 (2006); see also *People v. Lee*, 214 Ill. 2d 476, 482, 828 N.E.2d 237 (2005) ("[a] court should not compromise the stability of the legal system by declaring legislation unconstitutional when a particular case does not require it"). Our supreme court has made clear that compliance with this rule is mandatory. See *E.H.*, 224 Ill. 2d at 178 (and cases cited therein); 210 Ill. 2d R. 18(c)(4).

The orders of the Board dismissing all 10 complaints without a public hearing are affirmed.

Affirmed.

McBRIDE, J., concurs.

JUSTICE ROBERT E. GORDON, concurring in part and dissenting in part:

Today the majority affirms the dismissal by the Illinois State Board of Elections (Board) of 10 complaints brought by the Cook County Republican Party (GOP) alleging violations of the Election Code (Code) (10 ILCS 5/1—1 *et seq.* (West 2004)). The majority first affirms the Board's dismissals, by 5-3 votes,[1] of two of the complaints—against the 5th Ward Regular Democratic Organization (5th Ward complaint) and the 28th Ward Democratic committeeman (28th Ward complaint). The majority also affirms the Board's dismissals, by 4-4 tie votes, of the remaining eight complaints. I agree with the majority's decision affirming the dismissals of the 5th Ward and 28th Ward complaints. Accordingly, I concur with this portion of the majority's judgment and

---

[1]The Board consists of eight members, four from each of the two major political parties. 10 ILCS 5/1A—2 (West 2004). Five votes are necessary for any action of the Board to become effective. 10 ILCS 5/1A—7 (West 2000).

opinion. However, I disagree with the majority's decision affirming the Board's tie-vote dismissals of the remaining eight complaints. I respectfully dissent from that part of the judgment and opinion.

An important question in this case is whether tie-vote dismissals by the Board, pursuant to the amended section 9—21 of the Code (10 ILCS 5/9—21 (West 2004)), are judicially reviewable. Section 9—21 provides, in pertinent part: "If the Board fails to determine that the complaint has been filed on justifiable grounds, it shall dismiss the complaint without further hearing." 10 ILCS 5/9—21 (West 2004). Five votes are necessary for any action of the Board to become effective. 10 ILCS 5/1A—7 (West 2004). Accordingly, if the Board fails to reach a five-vote majority on whether a complaint has been filed on justifiable grounds—*e.g.*, the vote is a 4-4 tie—the Board has failed to determine that the complaint was filed on justifiable grounds, and under section 9—21, the complaint must be dismissed.[2]

In my view, such tie-vote dismissals are not reviewable. Without a five-vote majority, the Board could not adopt any findings or reasons for its dismissals, including that the complaint lacked justifiable grounds. See 10 ILCS 5/1A—7 (West 2004). In these circumstances, there is essentially nothing for this court to review, other than the question of whether the Board followed the statute and dismissed the complaints. However, it is a foregone conclusion that the Board complied with the statute. The subject at issue is tie-vote *dismissals* under section 9—21. If the Board dismissed the complaints pursuant to section 9—21, the Board clearly complied with the statute. Any review of whether the complaints were dismissed in compliance with section 9—21 would be a meaningless exercise.

Notwithstanding the foregoing, the Board argues that dismissals based on tie votes are judicially reviewable. In support of this argument, the Board points to sections 9—22 and 9—21 of the Code. Section 9—22 provides: "Any *** person who files a complaint on which a hearing was denied *** may obtain judicial review" (10 ILCS 5/9—22 (West 2004)), and section 9—21 states: "If the Board fails to determine that the complaint has been filed on justifiable grounds, it shall dismiss the complaint without further hearing" (10 ILCS 5/9—21 (West 2004)).

---

[2]Prior to the amendment to section 9—21 (Pub. Act 93—574, eff. August 21, 2003), there was no such requirement that the complaint be dismissed if the Board failed to reach a five-vote majority. See *Illinois Republican Party v. Illinois State Board of Elections*, 188 Ill. 2d 70, 72-75 (1999). The preamendment version of section 9—21 provided, in pertinent part: "If the Board determines that the complaint has not been filed on justifiable grounds, it shall dismiss the complaint without further hearing." 10 ILCS 5/9—21 (West 2002).

The Board appears to argue that, because section 9—22 provides for review of complaints where a hearing was denied, and because section 9—21 includes within its scope tie-vote dismissals, such dismissals are subject to judicial review. This argument is unpersuasive.

I note, initially, that section 9—22 does not expressly mention tie votes. A more important point, however, is that the Board's argument leaves unanswered the question of what the scope of our review would be if we were to review tie-vote dismissals. As previously indicated, because tie-vote dismissals lack the requisite five-vote majority "necessary for any action of the Board to become effective" (10 ILCS 5/1A—7 (West 2004)), the Board cannot, in such situations, have made any determinations that the complaints at issue lacked justifiable grounds. As a result, there would be, in these cases, essentially nothing for this court to review.

The Board next argues, in further support of its claim that tie-vote dismissals are reviewable, that there is no other statutory prohibition against such review. The Board notes, for example, that there is no requirement in the Administrative Review Law (the Review Law) (735 ILCS 5/3—101 *et seq.* (West 2004)) that a final administrative decision must be based on a majority vote in order to be subject to judicial review. This argument also is unpersuasive. While the Review Law does not expressly prohibit tie-vote dismissals, it also does not expressly allow them. There is no mention of tie-vote dismissals in the Review Law.

In a third argument in support of its reviewability contention, the Board asserts that, in the case at bar, its dismissal orders, taken together with the administrative record, "adequately show the allegations and evidence that the [Board] considered and the reasons for the tie-vote dismissals to permit judicial review." According to the Board, there was sufficient support for these (tie-vote) dismissals to meet the standard for judicial review set forth in *Reinhardt v. Board of Education of Alton Community Unit School District No. 11*, 61 Ill. 2d 101 (1975), which stated:

"It is clear that a decision by an administrative agency must contain findings to make possible a judicial review of the agency's decision. The Supreme Court in *Securities [&] Exchange Com[m'n] v. Chenery Corp.*, 318 U.S. 80, 94, 87 L. Ed. 626, [636,] 63 S. Ct. 454[, 462 (1943)], described the requirement[,] stating that 'the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.' " *Reinhardt*, 61 Ill. 2d at 103.

The record in the case at bar contains sufficient support to allow review of the dismissals of complaints *where the dismissals are based*

*on majority votes.* In such a case, it is clear that the Board, by virtue of its majority vote, adopted the relevant findings and reasons that are of record. However, where the dismissals were by tie votes, it cannot be said that the Board adopted the relevant reasons, no matter how clearly they were disclosed in the record.

If tie-vote dismissals under the amended section 9—21 are not reviewable, this raises the question of whether the amendment to section 9—21 is constitutional. The GOP argues that it is not. According to the GOP, if dismissals by tie vote (pursuant to section 9—21) are not subject to judicial review, while dismissals by majority vote are subject to such review, this constitutes a violation of the constitutional guarantee of equal protection. Ill. Const. 1970, art. I, §2.

In its opinion in the case at bar, the majority holds that, because the constitutionality of section 9—21 was not raised in the parties' original briefs to this court, this issue has been waived. 378 Ill. App. 3d at 763-64. In my view, the waiver rule should be disregarded in this instance. "The waiver rule is a limitation on the parties and not on the court." *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.,* 352 Ill. App. 3d 160, 166 (2004). "[T]his court is not bound by the principle of waiver and, in the interest of a just result, we may elect to address an argument." *Chubb Insurance Co. v. DeChambre,* 349 Ill. App. 3d 56, 60 (2004).

During initial oral argument in the case at bar, this court raised, *sua sponte,* the issue of whether dismissals by tie vote, pursuant to section 9—21, were judicially reviewable, and we invited the parties to brief this issue. The majority opinion mentions this request for supplemental briefing. However, the majority fails to mention that, while discussing this additional briefing with the parties, we expressly noted that, if tie-vote dismissals were not reviewable, this might raise a question as to the constitutionality of the amendment to section 9—21. Given our mention of this issue at the time we requested additional briefing, it is understandable that the GOP chose to argue this question in its supplemental brief. In these circumstances, the waiver rule should be disregarded, and the GOP's argument regarding the constitutionality of section 9—21 should be addressed.

I agree with the GOP that, if tie-vote dismissals are not reviewable, the amendment to section 9—21 violates the constitutional guarantee of equal protection. Ill. Const. 1970, art. I, §2. "Whether a statute is constitutional presents a question of law that we review *de novo.*" *Schultz v. Lakewood Electric Corp.,* 362 Ill. App. 3d 716, 720 (2005).

The principles of equal protection analysis are well established.

"In conducting an equal protection analysis, we apply the same

standards under both the United States Constitution and the Illinois Constitution. [Citation.] The guarantee of equal protection requires the government to treat similarly situated individuals in a similar fashion. [Citation.] It does not prevent the government from drawing distinctions between different categories of people in enacting legislation, but it does prohibit the government from doing so on the basis of criteria wholly unrelated to the legislation's purpose. [Citation.] Where legislation does not affect a fundamental right or involve a suspect or quasi-suspect classification, the appropriate level of scrutiny is the rational basis test. [Citation.] Under the rational basis test, a court's review of a classification is limited and deferential. [Citation.] *** If any set of facts can reasonably be conceived to justify the classification, it will not be construed as violating the equal protection guarantee. [Citation.]" *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417, 434 (2005).

" 'The rational basis test is satisfied where the challenged statute bears a rational relationship to the purpose the legislature intended to achieve in enacting the statute.' [*People v.*] *Cornelius*, 213 Ill. 2d [178,] 203-04 [(2004)]. *** 'So long as there is a conceivable basis for finding the statute rationally related to a legitimate state interest, the law must be upheld.' *Village of Lake Villa* [*v. Stokovich*], 211 Ill. 2d [106,] 126 [(2004)]." *Schultz*, 362 Ill. App. 3d at 720.

In the case at bar, the GOP is similarly situated to other claimants whose complaints have been dismissed by the Board. However, under the amended section 9—21, the GOP is not treated similarly to claimants whose complaints were dismissed by a majority vote of the Board. Those claimants whose complaints were dismissed by a vote of 8-0, 7-1, 6-2 or 5-3 may seek judicial review of the decision. Claimants such as the GOP, on the other hand, whose complaints were dismissed by a tie vote pursuant to the amended section 9—21, may not—in my view—seek judicial review.

As is noted in the parties' supplemental briefing, there is essentially no legislative history regarding the 2003 amendment to section 9—21. The Board's brief states:

"The section 9—21 amendment was a small part of an omnibus, 200[-]page, Election Code reform amendment added by the Illinois House of Representatives [citation] to an Illinois Senate bill [citation]. As such, it engendered no debate or comment on the floor of either chamber."

As a result, it is unclear what the legislature intended to achieve in amending section 9—21. However, even without a clearly articulated legislative purpose, the analysis here is the same.

I can conceive of no legitimate state interest in a statutory scheme

under which claimants whose complaints were dismissed by a majority vote may seek judicial review, but claimants whose complaints were dismissed by a tie vote may not.[3] It follows that there is no conceivable basis for finding the amendment to section 9—21 "rationally related to a legitimate state interest" (*Schultz*, 362 Ill. App. 3d at 720) where no such interest exists. In my view, the 2003 amendment to section 9—21, on its face, violates the constitutional guarantee of equal protection.

In making this determination, I necessarily conclude that the amendment to section 9—21 "cannot reasonably be construed in a manner that would preserve its validity." 210 Ill. 2d R. 18(c)(3). I also conclude, again necessarily, that there is no alternative, nonconstitutional ground on which the decision could be based. See *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 396 (1994). In keeping with Supreme Court Rule 18(c)(4) (210 Ill. 2d R. 18(c)(4)), I have carefully considered the alternative ground (argued by the Board) that tie-vote dismissals are subject to judicial review. As previously indicated, I reject the Board's arguments on this point.

I would hold that the amendment to section 9—21 violates the constitutional guarantee of equal protection, and the amendment therefore must be stricken. Section 9—21 would revert to its pre-amendment version, which stated: "If the Board determines that the complaint has not been filed on justifiable grounds, it shall dismiss the complaint without further hearing." 10 ILCS 5/9—21 (West 2002). Under our supreme court's construction of this version of the statute (*Illinois Republican Party v. Illinois State Board of Elections*, 188 Ill. 2d 70 (1999)), a deadlock vote on a complaint automatically results in the complaint's advancing to a public hearing.

For the reasons set forth above, I would reverse the Board's tie-vote dismissals of the eight remaining complaints and would remand these complaints to the Board for public hearing. I respectfully dissent from that portion of the majority's judgment and opinion which holds otherwise.

---

[3]As the Board argues in contending that section 9—21 dismissals should be reviewable, it makes no sense for "[b]ipartisan, majority-vote dismissals [to] be reviewable while partisan, tie-vote dismissals [are] not."